**Mrs. Leo H. HAYS, as natural mother and next friend of Thomas Lee Hays, Petitioner,**

**v.**

**Al MURPHY, Warden, Oklahoma State Penitentiary and The Attorney General of the State of Oklahoma, Respondents.**

No. 81–343–C.

United States District Court,
E. D. Oklahoma.

Sept. 8, 1981.

Kent Eldridge and Charles Cox, Oklahoma City, Okl., Louis W. Bullock, Tulsa, Okl., for Hays.

David W. Lee, Asst. Atty. Gen., Oklahoma City, Okl., for Murphy and State of Okl.

### MEMORANDUM OPINION AND FINDINGS OF FACT AND CONCLUSIONS OF LAW

BOHANON, District Judge.

This matter comes for hearing upon application of Mrs. Leo H. Hays, (hereafter "applicant" or "Mrs. Hays") claiming standing to petition for a writ of habeas corpus for her son, Thomas Lee Hays, who is presently awaiting execution at the Oklahoma State Penitentiary, McAlester, Oklahoma. The Court of Criminal Appeals had set an execution date of September 14, 1981.

The filings reflect that the applicant, through counsel, waived objection to venue and also to the physical presence of Thomas Lee Hays at the hearing held September 8, 1981, at Oklahoma City, Oklahoma.

The background facts of this case are related in the Oklahoma Court of Criminal Appeals opinion, *Hays v. State*, 617 P.2d 223 (Okl.Cr.App.1980).

Be it remembered that during the course of the hearing, the court orally granted the following motions filed at the Office of the Court Clerk, Muskogee, Oklahoma on September 4, 1981:

a. Petitioner's Motion to Consider Pleading Necessary for a Fair Determination of the Merit of this Habeas Corpus Petition.

b. Petitioner's Motion to File Affidavit and other Relevant Papers, pursuant to Rule 7 of Rules Governing § 2255 Cases.

Applicant further filed an Application for a Stay of Execution.

Mrs. Hays filed the aforesaid petition in the capacity of "next friend" of Thomas Lee Hays. The petition recounts certain instances of unusual and inconsistent behavior, which will be dealt with hereafter, on the part of her son and alleges she has standing to bring the present proceeding:

"... because Thomas Lee Hays is incapable of maintaining the proceedings himself or of protecting his own Federal constitutional rights not to be subjected to the execution of an illegal sentence to death."

Stock Petition at 3.

The bulk of applicant's proof at the trial was directed at convincing the court Hays was incompetent by reason of his being a schizophrenic.

It cannot be overemphasized that Thomas Lee Hays does not bring this application in his own behalf. In fact, on September 2, 1981, the Oklahoma Court of Criminal Appeals held, after a hearing at which Mr. Hays was present: [1]

"... this Court therefore being fully advised in the premises finds that Thomas Lee Hays has affirmatively waived any further legal proceeding on his behalf and does not seek a stay of execution."

Order Declining to Issue Stay of Execution at 2.

The evidence indicates Hays had manifested to his court-appointed attorney, Mr. Settle, that he wished no further legal proceedings instituted on his behalf. *Hays v. State, et al.* Appellate No. F–77–555, Hearing on Motion to Dismiss before Oklahoma Court of Criminal Appeals, September 2, 1981, at 7. Hays refused to return the documents sent to him for signature which

---

1. The following colloquy occurred at the hearing between Mr. Hays and the Honorable Judges of the Court:

"JUDGE BRETT: You may step down, Mr. Settle, and the Court thanks you for being available for this purpose.

Mr. Hays, would you please stand up. I have four questions I would like to propound to you.

Do you want any further legal proceedings in your behalf?

MR. HAYS: No.

JUDGE BRETT: Do you want these lawyers, that are sitting here, to represent you?

MR. HAYS: No.

JUDGE BRETT: Now, you understand, that your execution date is set for September 14?

MR. HAYS: Yes.

JUDGE BRETT: And you understand that unless you state that you wish the appeal to go further that that execution date will probably materialize?

MR. HAYS: Yes.

JUDGE CORNISH: Mr. Hays, do you wish that Mr. Settle withdraw from the case, from any further representation of you?

MR. HAYS: No comment.

JUDGE BUSSEY: Mr. Hays, you do understand that there is a post-conviction remedy available to you and if you elect to have that instituted by any party you're entitled to do so under State Laws; do you understand that?

MR. HAYS: I didn't hear you.

JUDGE BUSSEY: Do you understand that you can have further proceedings if you desire to do so; do you understand that?

MR. HAYS: No comment.

JUDGE BUSSEY: No questions."

*Hays v. State, et al.*, Appellate No. F–77–555. Hearing on Motion to Dismiss, Oklahoma Court of Criminal Appeals, September 2, 1981, at 25–26.

would have resulted in the filing of a Petition for a Writ of Certiorari to the United States Supreme Court. *Id.* at 9.[2]

The law permits "next friend" applications to be brought in certain limited circumstances. Indeed, the habeas corpus statutes provide the application "shall be in writing signed and verified by the person for whose relief it is intended *or by someone acting in his behalf.*" 28 U.S.C. § 2242. (emphasis added). The specific circumstance when the application can be brought by a "next friend" which would be applicable here is when the person held is incompetent, and thus legally "unable to seek relief in his own behalf." *Gilmore v. Utah*, 429 U.S. 1012, 1014, 97 S.Ct. 436, 437, 50 L.Ed.2d 632 (1976) (Burger, C. J., concurring). This court can only find "next friend" standing to exist "under recognized legal principles." *Evans v. Bennett*, 440 U.S. 1301, 1305, 99 S.Ct. 1481, 1484, 59 L.Ed.2d 756 (1979) (Rehnquist, J.) (application for stay of execution).

This court must make two discrete inquiries. First, whether the applicant can be characterized as a true "next friend." Second, whether "a 'next friend' suit is maintainable because the person on whose behalf they act is incompetent." *Davis v. Austin*, 492 F.Supp. 273, 275 (N.D.Ga.1980);

*see also Weber v. Garza*, 570 F.2d 511 (5th Cir. 1978); *Evans v. Bennett*, 467 F.Supp. 1108 (S.D.Ala.1979). The inquiries must be made previous to any of the substantive issues in the case being addressed. The reason therefor was underscored by Chief Justice Burger in *Gilmore, supra*, when he recognized the constitutional limitation of the power of the federal courts. The Chief Justice reasoned that only when a "case or controversy" exists, as envisioned under Article III of the Constitution, does the court have jurisdiction, and the power in aid of its jurisdiction, to intercede in any manner, 429 U.S. at 1016, 97 S.Ct. at 439. Thus, this court only has subject matter jurisdiction to address the substantive issues presented in the petition if Hays properly (and with procedural considerations recognized) brings this petition himself, or if he is found to be incompetent to do so, and a legally sufficient petition is proffered by a "next friend."

The threshold issue to be addressed is whether Mrs. Hays qualifies as a proper "next friend:"

"In seeking to determine whether ... persons may institute a 'next friend' action, the court should endeavour to keep in mind that

'it was not intended that the writ of habeas corpus should be availed of, as a

---

**2.** It became apparent as early as May, 1981, that Hays had advised his lawyer he wished no further appeals be taken:

"COMES NOW the Appellant, Thomas Lee Hayes, aka Sonny Hayes, by and through his Court-appointed attorney, Bill Settle, and for answer or response to the Application of the State, alleges and states:

1. The Appellant admits the six months period of time has elapsed since this Court issued its orders staying the execution warrant and that no further appeals have been taken by the Appellant.

2. This attorney would further state to the Court that he has talked with the Appellant about an appeal to the Supreme Court of the United States of America; that said attorney has prior to this time prepared all of the documents necessary to perfect said appeal; that said attorney wrote the Appellant regarding the appeal, received no response, and met with the Appellant in person at the Oklahoma State Penitentiary in McAlester, Oklahoma on Tuesday, April 28, 1981, to discuss further appeals.

3. This attorney would state to the Court that after inquiring over and over several times about an appeal to the Supreme Court of the United States of America, the Appellant on each occasion stated he did not wish for this attorney to proceed with any further appeals in this case, although he still professes his innocence.

4. This attorney would further state to the Court the Appellant appeared to have command of his faculties, discussed his case and appeal rational, and therefore was able to understand that if no further appeals were taken, this Court could set a date for this execution. The Appellant asked this attorney to request that said execution be set as soon as possible.

SETTLE & LANDRUM
By:___/s/___Bill Settle"

Attorney Settle's "Response to Application of the State for Order Vacating Stay of Warrant of Execution and Setting Date of Execution," Respondents' Response, Exhibit "B1" originally filed with the Court of Criminal Appeals on May 6, 1981.

matter of course, by intruders or uninvited meddlers, styling themselves next friends.'

*Wilson v. Dixon*, 256 F.2d 536, 538 (9th Cir. 1958)" *Davis, supra* at 275.

■ Whatever degree of closeness is necessary to fulfill the "next friend" requirement is no doubt found in the relationship between a mother and her son. *See Evans, supra; Gilmore, supra; Davis, supra.* This is particularly true where, as here, there is undisputed evidence of a mother/son relationship during the child's maturation, and a practice of visitation during Mr. Hays' imprisonment.

■ The second requirement for "next friend" status poses a considerably greater problem, and realistically constitutes the focal inquiry in this proceeding. A successful attack on "competency is the requisite threshold for applicant's standing." *Lenhard v. Wolff*, 443 U.S. 1306, 1308, 100 S.Ct. 3, 5, 61 L.Ed.2d 885 (1974) (Rehnquist, J. as circuit justice).

Is Thomas Lee Hays legally competent? The court finds he is.

Proper consideration of the issue necessitates a summary review of Hays' mental history to date. The question of why any issue of incompetency exists can only be answered if the issue is viewed against the backdrop of Mr. Hays' somewhat lengthy history of commitment for mental instability.

Thomas Hays' competency had been questioned in Muskogee (State) District Court on at least four occasions prior to his arrest for the killing of Everett Leonard Vance in March, 1977. *See* Petitioner's Exhibits 1 through 4 filed at September 8 hearing. *See also* Expanded Petition at 7(a) and 7(b); Transcript of Proceedings before The Honorable Robert A. Layden in *Hays v. State*, No. F–77–555, held May 19, 1981. He was committed on four occasions and subsequently released. Though the records are not entirely complete, it is clear his competency was restored July 10, 1975.

Hays' competency was never an issue at trial in 1977. Neither side petitioned for a competency examination. The trial judge affirmatively found Hays' mental condition to warrant no "special consideration." Transcript of Proceedings before Judge Layden, *Id.* at 8.

There is very little affirmative evidence of any mental problems manifested by Hays since his restoration of competency in July, 1975. The record discloses that as late as May 19, 1981, both Mrs. Hays and counsel Louis Bullock had opportunity to have the special master address the matter, and chose not to do so. Transcript of Proceedings before Judge Layden, *Id.* at 11, 16.

*APPLICANT'S PROOF*:

The evidence of the applicant Mrs. Hays with respect to competency consisted of the conclusions of two qualified mental health professionals, and the lay observations of her counsel of record.

Dr. Delmar Ozolins, a clinical psychologist, drew his conclusions from a review of certain clinical records and observation of Hays for a short period of time (about thirty minutes) at the hearing held before the Oklahoma Court of Criminal Appeals. He believed Hays should at least receive a full psychiatric evaluation.

The testimony with respect to Dr. Hans Von Brauchitsch's findings, based upon substantially the same foundation as Dr. Ozolins', was less conclusive. Dr. Von Brauchitsch is a professor of psychiatry at The University of Oklahoma. Dr. Von Brauchitsch in essence concluded there is "reasonable medical evidence" that Hays *may* suffer from debilitating mental illness. Even in rebuttal, having heard the State's witnesses testify, he could only conclude there existed reasonable evidence of Hays' mental illness.

The testimony of the State's witnesses convincingly diminished the probative value of the professional opinions ventured by Drs. Ozolins and Von Brauchitsch. The court specifically finds the testimony of applicant's experts to be unconvincing.

*RESPONDENTS' PROOF*:

Dr. Tony Edwards, Chief Psychologist at the Oklahoma State Penitentiary, McAles-

ter, Oklahoma, had dealings with Hays beginning early in January, 1981, when he learned Hays was not eating properly. Though the psychologist had made certain early findings supporting the petitioner's allegation of incompetency, these findings were later reconsidered. As was often stated during the course of the proceedings, mental condition is not a static thing. Further, the court finds these early findings to be presumptuous, based in part upon summary examinations given by Dr. Garcia some eighteen months earlier.

Dr. Edwards' last contacts compelled him to conclude Hays was in fact competent. The court finds this testimony credible, and gives weight to Hays' statement, made to Dr. Edwards, that Hays sincerely believed the death sentence would be carried out.

Dr. R. D. Garcia, Chief Psychiatrist, Eastern State Hospital, Vinita, Oklahoma, examined Hays in 1978, and as a result thereof, prescribed certain psychotropic medication. His last contacts with Hays in June, 1978, convinced him Hays had no symptoms of schizophrenia.

Dr. William Ford, Psychiatrist, Department of Corrections, had several unsuccessful contacts with Hays in 1981. The court finds from his testimony and that of others that it was a simple character trait of Hays to refuse contact with certain individuals, and Dr. Ford happened to be one of them.

On July 10, 1981, the most recent face-to-face evaluation was made of Hays by the Department of Corrections medical staff. Present at the examination were Dr. Cleve Beller, Chief Staff Physician, Oklahoma State Penitentiary; Dr. William Baker, Staff Psychiatrist, Joseph Harp Correctional Center; Dr. William Knoflicek, Staff Psychologist, Joseph Harp Correctional Center; and Dr. Tony Edwards, Chief Psychologist, Oklahoma State Penitentiary. At the conclusion of the interview the staff agreed by consensus that:

"I.  Thomas Lee Hayes [sic] was alert, and not under the influence of

mind altering drugs, nor did he exhibit evidence of toxicity from any organic cause.

II.  Thomas Lee Hayes [sic] was not psychotic.

III.  Thomas Lee Hayes [sic] was competent to make decisions in his behalf and to understand the consequences of his decisions."

Letter to Dr. Start from Dr. Beller dated July 13, 1981. Appendix "N1," Response of the State.

The court views these findings as particularly probative, based upon the training and previous exposure of the participants, as well as this court's evaluation as to the demeanor and credibility of those involved who were also present at the hearing.

Dr. Beller, who was instrumental in conducting the hearing, concluded Hays was competent, and further that his medical complaints were few, other than those attributable to chronic alcoholism. The other mental health professionals who attended the July 10, 1981, conference echoed Dr. Beller's view.

The court finds further evidence of Hays' competency in the testimony of James E. Sorrells, Correctional Case Manager Supervisor, Oklahoma State Penitentiary, McAlester, Oklahoma. Sorrells is Hays' case manager, and is in a particularly good position to offer observational testimony and insight into Hays' personality and behavior.

Sorrells knows Hays as well as anyone who testified, save perhaps Mrs. Hays. The testimony reflects that Sorrells and Hays had spoken daily, sometimes twice daily, since May, 1981, except on weekends when presumably Sorrells was off duty. Sorrells found Hays to be rational and competent.

Hays is somewhat eccentric and selective in his relationships, but the court cannot conclude that these instances of behavior in any sense lead to a conclusion of mental sickness. Rather, the record reflects that Hays at best is suffering anxiety resulting from the same type of "hydraulic pressure" which influences the decision of the courts as execution day draws nearer.[3]

3.  See Evans v. Bennett, 440 U.S. at 1307, 99 S.Ct. at 1484 (1979) (Rehnquist, J.); Northern Securities Co. v. United States, 193 U.S. 197 at

In *Rees v. Peyton*, 384 U.S. 312, 86 S.Ct. 1505, 16 L.Ed.2d 583 (1966) (per curiam), the Court instructed the trial court to make a finding with respect to the competence of Rees to abandon further post-conviction attacks on his death sentence. The Court provided the following standard:

"... [we] direct the District Court to determine Rees' mental competence in the present posture of things, that is, whether he has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder or defect which may substantially affect his capacity in the premises."

at 314, 86 S.Ct. at 1506.

The Court's standard is in substance similar to the one used to determine competence to stand trial. *See e. g. United States v. Dunn*, 594 F.2d 1367 (10th Cir. 1979).

WHEREFORE, PREMISES CONSIDERED, THE COURT FINDS Thomas Lee Hays has at the present time, and had had at least through a period preceding September 2, 1981, and June 15, 1981, capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation.

THE COURT ADDITIONALLY FINDS Thomas Lee Hays is not suffering from a mental disease, disorder or defect which may substantially affect his capacity in the premises. Otherwise stated, Thomas Lee Hays is legally competent.

THE COURT ADDITIONALLY FINDS that due to the competency of Thomas Lee Hays, that Mrs. Leo Hays lacks the requisite standing to present a Petition for a Writ of Habeas Corpus on behalf of her son. Accordingly, the court is without subject matter jurisdiction to entertain any substantive attack on the conviction and sentence of Thomas Lee Hays, as the court lacks an Article III "case or controversy." *Gilmore, supra.*

401, 24 S.Ct. 436 at 468, 48 L.Ed. 679 (1904) (Holmes, J. dissenting); *cf. Fedorenko v. United States*, —— U.S. —— at ——, 101 S.Ct. 737 at 762, 66 L.Ed.2d 686 (1981) (Stevens, J. dis-

THE COURT ADDITIONALLY FINDS it can and should retain jurisdiction of the matter for the sole purpose of issuing a STAY OF EXECUTION on behalf of Thomas Lee Hays for a period of thirty (30) days, through October 8, 1981. The court finds authority to take this extraordinary measure pursuant to Title 28, United States Code, Section 2251.

A Judgment will accordingly be entered herein this date.

senting); *Terry v. Ohio*, 392 U.S. 1 at 29, 88 S.Ct. 1868 at 1884, 20 L.Ed.2d 889 (1967) (Douglas, J. dissenting).