James William HAMBLEN, Petitioner,

v.

Richard L. DUGGER, Secretary, Florida
Department of Corrections,
Respondent.

No. 89–567–Civ–J–12.

United States District Court,
M.D. Florida,
Jacksonville Division.

July 10, 1989.

Billy H. Nolas, Julie D. Naylor, Martin J. McClain, and Francisco Rivera, Office of the Capital Collateral Representative, Tallahassee, Fla., for petitioner.

Carolyn M. Snurkowski, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for respondent.

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING MOTION FOR STAY OF EXECUTION

MELTON, District Judge.

This cause is before the Court on a Petition for Writ of Habeas Corpus By a Person in State Custody ("petition") pursuant to 28 U.S.C. § 2254 (1982), and a Motion for Stay of Execution, filed in the name of JAMES WILLIAM HAMBLEN ("petitioner"), a death-row inmate at Florida State Prison. The petition has been filed by the Office of the Capital Collateral Representative on behalf of petitioner. The petition seeks relief with respect to the death sentence on the conviction. For the reasons set forth below, the Court will deny the petition and the motion for stay of execution.

## I. BACKGROUND

Petitioner seeks relief from the death sentence based on the following grounds: (1) the trial judge erred in failing to conduct an adequate hearing, as required by *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), prior to allowing petitioner to waive appointed counsel and waive an advisory sentencing jury, in violation of petitioner's rights under the sixth and fourteenth amendments; (2) the trial judge erred in allowing petitioner to waive counsel in the penalty phase, in violation of petitioner's rights under the eighth and fourteenth amendments; (3) the Supreme Court of Florida erred when it eliminated one aggravating factor but failed to remand the case for resentencing, pursuant to *Elledge v. State,* 346 So.2d 998 (Fla.1977), in violation of petitioner's rights under the fifth, eighth and fourteenth amendments; (4) the trial court improperly applied a presumption of death during the sentencing phase, in violation of petitioner's rights under the eighth and fourteenth amendments; (5) the sentencing court erred by considering victim impact information, in violation of petitioner's rights under the eighth and fourteenth amendments; and (6) petitioner was denied effective assistance of counsel on direct appeal because of the failure to appeal the allegedly improper waiver of counsel, waiver of sentencing jury, failure to urge remand, presumption of death, and consideration of victim impact information. The Court will address each of the grounds enumerated

above, after the background to this proceeding is set forth.[1]

(A) *Facts of the Crime*

Petitioner was indicted, convicted and sentenced to death for the crime of murder in the first degree for a murder which occurred on April 24, 1984. The Florida Supreme Court set forth a succinct and accurate statement of the facts constituting the crime for which petitioner was convicted:

> [Hamblen] said he had driven to Florida from Texas.... He needed money to park his rental car at the airport, and decided to steal the necessary funds. While driving around the Jacksonville area, one store, the Sensual Woman, caught his eye as a potential target. Finding Ms. [Laureen Jean] Edwards alone in the store, Hamblen pulled his gun and told her he wanted money. She gave him a small amount of cash from her cash drawer. He then told her to go into a dressing room and disrobe. Hamblen [said] he had no intention of sexually abusing Ms. Edwards; he only wanted to make it difficult for her to follow him as he made his escape.
>
> According to Hamblen, his pistol fired accidentally in the dressing room as the woman disrobed. Ms. Edwards then told Hamblen she had more money in the back of the store. She said she would take him to it if he would accompany her. As they proceeded toward the rear, he saw her touch a button that he suspected (correctly) was for a silent alarm. Angered that "anybody could be so stupid over so little money," Hamblen ordered her back into the dressing room where he shot her once in the back of the head.

*Hamblen v. Florida,* 527 So.2d 800, 801 (Fla.1988). The Court adopts this description for present purposes.

(B) *Arrest*

Duval County Sheriff's officers responded to the silent alarm and saw petitioner inside the store. The officers believed that petitioner was the proprietor or an employee at first, but became suspicious when he would not open the locked door. When petitioner came out of the store, the officers told him that they were responding to the silent alarm. Petitioner said that he knew why the officers were there and that he had killed a woman inside. Petitioner was arrested and the officers found a .38 caliber automatic pistol on petitioner, the partially clothed body of Ms. Edwards in a dressing room, and other physical evidence which corroborated petitioner's story. An autopsy confirmed that Ms. Edwards died from a single bullet wound to the head from a .38 caliber weapon held at close range. *Hamblen,* 527 So.2d at 801.

After his arrest, petitioner was advised of his rights and was taken to the Police Memorial Building, Homicide Office, and then to the Duval County jail. The arresting officer noted that petitioner was extremely calm, did not appear to be intoxicated or upset, and appeared to be "just normal." A.A. VIII:125. At the Homicide Office, petitioner waived his rights and made a statement in which he related the details leading up to his arrest for the murder of Ms. Edwards. A.A. I:56. The interviewing officer described petitioner's appearance as "very calm, collected, very coherent, very cooperative," not under the influence of any type of intoxicating substance, and apparently not suffering from any physical or emotional conditions. A.A. VIII:169–170.

(C) *Procedural History*

Petitioner was charged by indictment on May 10, 1984, with the crime of first-degree murder for the shooting death of Ms. Edwards. The public defenders office, which was appointed to represent petitioner, entered a plea of not guilty on petitioner's behalf. A psychiatric evaluation of petitioner was obtained, the results of which are discussed in the next section of

---

**1.** Relevant documents, including exhibits, waiver forms, orders, and transcripts of proceedings in the trial court, have been provided to the Court in an Advanced Appendix of ten volumes numbered I through X. Citations to documents in the Advanced Appendix will follow the following form "A.A. [Vol.]:[Pg.]."

this order. At a hearing on July 10, 1984, petitioner expressed his desire to "dispense with the services of the Public Defender." A.A. IV:21. After the trial judge determined that petitioner's decision to proceed *pro se* was made knowingly, voluntarily, and competently, the trial judge allowed petitioner to waive appointed counsel, but ordered that public defenders be available in case petitioner had any questions. A.A. IV:32. At the hearing on July 10, 1989, petitioner executed a Waiver of Right to Counsel form and then withdrew his plea of not guilty and entered a plea of guilty. A.A. IV:34. On August 3, 1984, petitioner waived his right to have a jury impaneled for sentencing proceedings and he waived his right to counsel at the sentencing proceedings. A.A. I:61–64. On September 7 and 11, 1984, the trial judge conducted the penalty phase. On September 21, 1984, after reviewing the record, the trial judge imposed a sentence of death.

Petitioner did not take an appeal from the sentence and made it clear that he did not want the case appealed. *Hamblen,* 527 So.2d at 802 n. 2. The public defenders office was appointed as appellate counsel and prosecuted the appeal of petitioner's sentence of death. The Supreme Court of Florida held that one of the three aggravating factors found by the trial judge was not applicable, but that the elimination of that one aggravating circumstance would not have resulted in petitioner's receiving a life sentence. *Id.* at 805. On June 2, 1988, the Supreme Court of Florida affirmed petitioner's death sentence.

The Governor of Florida signed a death warrant on May 1, 1989, to cause petitioner's sentence of death to be executed between July 11 and 18, 1989. Petitioner's execution is set for 7:00 a.m. on Wednesday, July 12, 1989. On June 6, 1989, the Office of the Capital Collateral Representative filed in the Supreme Court of Florida, a Petition for Extraordinary Relief, for a Writ of Habeas Corpus, Request for a Stay of Execution, and Application for Stay of Execution Pending Disposition of Petition for Writ of Certiorari. The petition for a writ of habeas corpus and application for stay of execution were argued in the Flor-

ida Supreme Court on Wednesday, July 5, 1989. On July 6, 1989, the petition for writ of habeas corpus and application for stay were denied. On July 10, 1989, the petition was filed in this Court, respondent filed a response in opposition, and the Court held a nonevidentiary hearing thereon.

(D) *Psychiatric Evaluations*

On June 19, 1984, in response to petitioner's motion, the trial court appointed Dr. Elizabeth A. McMahon, a clinical psychologist, to examine petitioner and assist in the preparation of the defense of insanity. Petitioner also underwent a psychiatric evaluation by Dr. Ernest Miller.

On July 6, 1984, Dr. Miller wrote petitioner's counsel with the results of his examination. Dr. Miller concluded that "the patient merits adjudication of competence for trial and does not meet the criteria for involuntary hospitalization" under Florida Law. A.A. I:67–68. Dr. Miller concluded further that "the patient was not insane at the time of the alleged crime but was able to understand the nature, quality and wrongfulness of his acts." A.A. I:68.

Dr. McMahon's confidential report, based on an examination on June 30, 1984, was prepared on August 1, 1984, and had similar conclusions: "Hamblen is presently competent to stand trial" and, despite a severe personality disorder, "he was sane within the purview of the M'Naughten Rule at the time of the alleged offenses." A.A. I:73–74. Dr. McMahon summarized her analysis by writing: "Although legally sane, Mr. Hamblen is a severely disturbed individual—and has been since childhood." A.A. I:74. At the sentencing hearing, petitioner stated the significance of the reports to him: "once it was determined to my satisfaction that I was legally sane when this crime was committed I made the conscious decision to dispense with the services of the Public Defender and to enter a plea of guilty to first degree murder." A.A. IX:213.

(E) *Penalty and Sentencing*

During the penalty phase, the state introduced evidence concerning the circumstanc-

es of the crime. Witnesses included the medical examiner who conducted the autopsy on the victim, arresting officers, investigating officers, the interviewing officer, a forensics expert, and a records custodian. After the state introduced evidence that "James William Hamblen, Jr." had been convicted of rape in Indiana in 1964, petitioner stipulated that the certified copy of the judgment and sentence for rape referred to him. A.A. IX:203–206. Petitioner requested his stand-by counsel to cross-examine only one witness: the records custodian from Indiana. Petitioner presented no evidence in defense and accepted the state's version of the facts.

The state argued three aggravating factors to the trial judge: (1) previous conviction of another capital crime or of a felony involving the use or threat of violence to the person (Fla.Stat. § 921.141(5)(b)); (2) commission of the capital felony while engaged in the commission of a robbery (Fla. Stat. § 921.141(5)(d)); and (3) the capital felony was especially heinous, atrocious or cruel (Fla. Stat. § 921.141(5)(h)). In response to a question from the trial judge, the state stated that, although not argued, a fourth aggravating factor also applied: the capital felony was a homicide and was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification (Fla. Stat. § 921.141(5)(i)). A.A. IX:215–216.

Petitioner did not present any evidence of any mitigating factors. In fact, petitioner stated, "I have substantially agreed with the remarks of the State's Attorney. I believe that he has correctly assessed my character, and certainly he has convincingly established the aggravated nature of the crime." A.A. IX:214.

After reviewing the four aggravating factors argued by the state, all of the statutory mitigating factors, the two reports of psychiatric examinations, and the entire record, the trial judge announced petitioner's sentence on September 21, 1984. The trial judge noted the following three aggravating factors: cold, calculated and pre-

meditated manner; previous conviction of a felony involving violence against another person (rape); and the capital felony was committed in the course of a robbery. The trial judge found that there were no statutory mitigating circumstances. A.A. X:232. Noting that the Pre–Sentence Investigation report recommended a sentence of life imprisonment, the trial judge found that petitioner's "background and history as set forth in the Pre–Sentence Investigation and the reports of Drs. Miller and McMahon do not offer any other sufficient mitigating circumstances." A.A. X:233.

The trial judge concluded his consideration of all aggravating and mitigating circumstances as follows: "In summary, the Court finds that three sufficient aggravating circumstances exist and no mitigating circumstances exist which would outweigh them and therefore the Court rejects the recommended sentence in the Pre-sentence Investigation Report. Consequently, under the evidence and the law of this State a sentence of death is mandated." A.A. X:233. The Court then pronounced petitioner's sentence of death.

## II. PETITIONER'S CLAIMS

As set forth above, petitioner asserts claims based on alleged errors by the trial court, appellate court, and appellate counsel.[2] There are two types of assistance of counsel claims asserted in the instant petition: petitioner's right to assistance of counsel was deprived when the trial court allowed him to waive counsel without a proper hearing, and his appellate counsel was ineffective. The ineffective assistance of counsel claims are based on appellate counsel's failure to appeal the waiver of counsel and waiver of jury sentencing, to urge the Supreme Court of Florida to remand for resentencing after eliminating one of the aggravating factors, to appeal the alleged presumption of death during sentencing, and to appeal the alleged consideration of victim impact information. The merits of the assistance of counsel claims will be addressed in conjunction with

**2.** *See supra* at 1–2.

each alleged court error. The Court will address each claim in turn below after setting forth the applicable standards for the review of state findings and conclusions and for ineffective assistance of counsel claims.

■ First, in reviewing petitioner's claims in this 28 U.S.C. § 2254 proceeding, the Court notes that state court findings of fact are entitled to a presumption of correctness. *See* 28 U.S.C. § 2254(d); *Oliver v. Wainwright*, 782 F.2d 1521, 1524 (11th Cir.), *cert. denied*, 479 U.S. 914, 107 S.Ct. 313, 93 L.Ed.2d 287 (1986); *Paxton v. Jarvis*, 735 F.2d 1306, 1309 (11th Cir.1984). Conclusions by state trial and appellate courts which are based on questions which are a mixture of fact and law, however, are not entitled to the presumption of correctness. *Cuyler v. Sullivan*, 446 U.S. 335, 341, 100 S.Ct. 1708, 1714, 64 L.Ed.2d 333 (1980).

The standard for reviewing ineffective assistance of counsel claims was established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In general, the *Strickland* standard for demonstrating constitutionally ineffective assistance of counsel requires that petitioner prove that his counsel "fell below an objective standard of reasonableness," *id.* at 688, 104 S.Ct. at 2064, based on an evaluation of his conduct from "counsel's perspective at the time," *id.* at 689, 104 S.Ct. at 2065, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. at 2068.

■ The ineffective assistance of counsel standard for appellate counsel requires that petitioner establish that the failure to raise an issue on appeal was not a deliberate tactical judgment or based on good faith evaluation of the merit of the issue. *E.g., Smith v. Murray*, 477 U.S. 527, 535–36, 106 S.Ct. 2661, 2666–67, 91 L.Ed.2d 434 (1986); *Jones v. Barnes*, 463 U.S. 745, 751–54, 103 S.Ct. 3308, 3312–14, 77 L.Ed.2d 987 (1983); *Francois v. Wainwright*, 741 F.2d 1275, 1285–86 (11th Cir. 1984). If deliberation or evaluation are absent from the decision to abandon an issue on appeal, effective assistance of counsel "may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986). As is discussed below, petitioner has not made the requisite showings in this case.

### (A) *Waiver of Counsel and Sentencing Jury*

Petitioner has argued that the trial court erroneously allowed petitioner to waive appointed counsel and jury sentencing for the following reasons: petitioner was mentally ill and incompetent to make a waiver of rights, a separate hearing should have been conducted, the trial judge's questions were pro forma and should have required narrative answers, petitioner's answers were untrue and contradictory, petitioner was not familiar with court procedures, and standby counsel did not render any assistance.

The basis of the improper waiver claim is that the waiver did not comply with the requirements set forth in *Faretta, supra.* In *Faretta*, the Supreme Court concluded that a state may not constitutionally force a criminal defendant to proceed with counsel. 422 U.S. at 807, 95 S.Ct. at 2527. The sixth amendment "implies a right of self-representation." *Id.* at 821, 95 S.Ct. at 2534. "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* at 835, 95 S.Ct. at 2541 (quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942)).

The Eleventh Circuit recently applied the *Faretta* standard in *Fitzpatrick v. Wainwright*, 800 F.2d 1057 (11th Cir.1986). In *Fitzpatrick*, the Eleventh Circuit noted that "a defendant's waiver of his right to counsel must be an intentional relinquish-

ment of a known right or privilege." *Id.* at 1063 (citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *Hance v. Zant*, 696 F.2d 940, 947 (11th Cir.1983)). The right of self-representation must be clearly and unequivocally asserted. *Id.* at 1064.

■ In the instant case, the trial court repeatedly cautioned petitioner that anything he said could be used against him and that he had the right to remain silent. The trial court then asked a series of questions to establish that petitioner's waiver of his right to counsel was made knowingly, voluntarily and intelligently. The trial court asked background questions concerning petitioner's age, level of education, employment, knowledge of his case, availability of counsel, role of attorneys, trial responsibility, knowledge of court proceedings, preparation to proceed, prior *pro se* representation, nature of the capital charge and potential penalties. A.A. IV:21–24, 29–30. The trial court also addressed petitioner's competence. At the hearing, the results of the two psychiatric examination reports mentioned above were revealed.[3] The reports demonstrated that petitioner was sane at the time of the offense and competent to proceed with trial. A.A. IV:27–28.

Based on a review of the record herein, it is evident that the trial judge ensured that Mr. Hamblen's waiver of appointed counsel was clear and unequivocal. The record contains ample evidence supporting the state court's implicit finding of fact that Mr. Hamblen waived his right to assistance of counsel voluntarily, intelligently, and competently. The trial judge allowed petitioner to waive the sentencing jury with an equal amount of caution. The trial judge instituted an additional precaution by ordering that the public defenders be on hand in case petitioner changed his mind or had a question. Stand-by counsel were available during all trial court proceedings and were actually used by petitioner at the penalty hearing to cross-examine one witness. In view of the record, the trial court's findings, and relevant law, this

Court is of the opinion that the trial court did not violate petitioner's right to assistance of counsel by allowing him to waive appointed counsel and the sentencing jury.

■ As a separate claim, petitioner asserts that the trial court erred in allowing a waiver of counsel at the penalty phase because such waiver prevented the possibility of an adversary proceeding at the penalty phase. The record is clear that petitioner was given the opportunity to exercise his right to counsel at the penalty phase and at every phase of the trial court proceedings. Petitioner's waiver of counsel was knowing and voluntary after appropriate questions from the trial judge, and stand-by counsel was available to assist petitioner. In fact, as mentioned above, petitioner requested the assistance of stand-by counsel during the penalty phase. In view of petitioner's right to waive counsel, and the evidence of the trial judge's careful review of all evidence and circumstances, the Court finds no violation of petitioner's rights in allowing petitioner to waive counsel in the penalty phase.

This Court concurs with the finding of the Supreme Court of Florida that the trial court fully complied with the requirements of *Faretta*. *Hamblen v. Dugger*, 546 So.2d 1039, 1041 (1989) (*per curiam*) (hereinafter *"Hamblen II"*). Of course, because the waivers were not error, the failure to appeal the waivers was not evidence of ineffective assistance of counsel.

(B) *Failure to Remand for Resentencing*

■ As a second ground for ineffective assistance of counsel, and as an independent ground, petitioner argues that the Supreme Court of Florida erred in failing to remand this case for resentencing after eliminating one of the aggravating factors and appellate counsel erred in failing to urge such a remand. Petitioner urges that such a remand was required under the rationale of *Elledge, supra.*

As the Supreme Court of Florida pointed out in *Hamblen II*, Florida cases subsequent to *Elledge* have held that "a death

3. *See supra* at 6–7.

sentence may be affirmed when an aggravating circumstance is eliminated if the court is convinced that such elimination would not have resulted in a life sentence." *Hamblen II* at 1041 (citing *Rogers v. State,* 511 So.2d 526, 535 (Fla.1987), *cert. denied,* 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988)).

In *Rogers,* the Florida Supreme Court eliminated three of the five aggravating factors found by the trial court. The elimination of aggravating factors left the same two aggravating factors found to exist in the instant case: murder committed by one previously convicted of a violent felony and the murder occurred during a robbery or attempted robbery. *See Rogers,* 511 So.2d at 533. In *Rogers,* the state Supreme Court also found that, contrary to the trial court findings, the record supported one mitigating factor. *Id.* at 535. Based on the reduction of aggravating factors from five to three and the increase of mitigating factors from zero to one, the *Rogers* court concluded: "we cannot say that there is any reasonable likelihood the trial court would have concluded that the aggravating circumstances were outweighed by the single mitigating factors." *Id.* "If there is no likelihood of a different sentence, the error must be deemed harmless." *Rogers,* 511 So.2d at 535.

As discussed above, the trial court in the instant case found that there were no statutory mitigating factors. The trial court considered the entire record including the two psychiatric reports and did not identify any non-statutory mitigating factors. Petitioner argues that mitigating factors exist and were implicitly found by the trial court because the trial judge stated that the record did "not offer any other sufficient mitigating circumstances" and "no mitigating circumstances exist which would outweigh" the aggravating circumstances. AA, X: 233. There is no support for petitioner's contentions in the record. This Court finds that the state trial court and appellate court's conclusions were supported by the record and that there is no

likelihood that a resentencing would have resulted in a different sentence. Since there was no error in not remanding for resentencing, appellate counsel committed no error in not urging such a remand.

### (C) *Presumption of Death*

■ As a third ineffectiveness of counsel claim and independent claim is petitioner's contention that the trial judge applied a presumption of death during sentencing. This claim derives from the trial judge's use of the phrase "is mandated." [4] The record is devoid of any indication or evidence that the trial judge believed a death sentence would be required under any given set of circumstances or that the trial judge believed that he did not have the discretion to impose any sentence other than the death penalty. On the contrary, the record indicates that the trial judge considered the entire range of possible sentences for the crime for which petitioner was charged and convicted. Not only did he consider all possible sentences, but the record indicates that, prior to pronouncing his sentence, the trial judge considered relevant law and all of the evidence of record, including the testimony, psychiatric reports, and presentencing investigation report. Again, this Court concurs with the Florida Supreme Court and finds that there is no merit in the "presumption of death claim."

### (D) *Victim Impact Information*

■ The last argument presented in petitioner's behalf as a separate claim and source of ineffectiveness of counsel claim is the argument that the trial judge violated *Booth v. Maryland,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), by improperly considering the following types of alleged victim impact information: 1) a box of photographs and letters relating to petitioner's murder victim, 2) letters mailed to the trial judge from relatives of the victim, and 3) a statement in the presentence investigation report by the victim's husband about petitioner.

---

**4.** *See supra* at 9–10 (trial judge's conclusion).

The unsolicited box of photographs and letters was delivered to the trial judge by the victim's husband.[5] The record indicates that the trial judge looked into the box to see what was in it. The trial judge held a hearing to apprise all parties about the fact that the box had been brought to his chambers and to announce that the contents of the box would not be considered in determining petitioner's sentence unless the contents were presented to the Court by the state or the petitioner during the sentencing proceeding. A.A. I:82; VI:90. According to the record, the contents of the box were not presented to the Court for its review during the sentencing phase or at any other time. There is no evidence in the record that the sentencing judge considered any of the contents of the box when he was determining petitioner's sentence.

Petitioner argues that the trial judge did not make such a clear statement about not considering either the letters mailed to his chambers or the victim's husband's statement. The record is devoid of any suggestion, however, that any of the alleged victim impact information was considered by the sentencing judge when he determined petitioner's sentence.

*Booth* prohibits the consideration of any victim impact information by the sentencing authority. 482 U.S. at 509, 107 S.Ct. at 2536. As the Supreme Court of Florida has noted in *Hamblen II,* at 1042, and in *Grossman v. Florida,* 525 So.2d 833, 841–842 (Fla.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989), *Booth* was a case involving the presentation of victim impact information to a sentencing jury, not to a sentencing judge who is required to state in writing his consideration of the statutory aggravating factors and the statutory and non-statutory mitigating circumstances of a case. Moreover, in Florida's trifurcated sentencing proce-

dure, the state supreme court reviews the stated reasons in the judge's order. Consequently, if an impermissible influence exists, it will appear on the face of the sentencing order (none do in this case) and review by the high court will ameliorate any impact thereof. Based on the evidence in the record of the trial judge's handling of the unusual delivery of a box of photographs and writings to the judge, and the absence of any evidence that the trial judge ever considered the items in the box, the letters mailed to the trial judge or the victim's husband's statement, this Court finds no violation of petitioner's right to a fair sentencing determination.

## III. PETITION WITHOUT PETITIONER'S CONSENT

■ As noted *supra,* the nominal petitioner herein has not actually joined in the filing of this petition. Indeed, he has resisted all attempts to review his death sentence. The Court has received and reviewed this petition under the fiction of petitioner's cooperation in this effort when in fact the filing is in the nature of a "next friend" filing by the Florida Capital Collateral Representative's office ("CCR"). As a "next friend" petition, the Court must express its concern over its jurisdiction to decide the issues heretofore raised.

■ Plainly, the law anticipates that "next friend" petitions may be necessary. *See* 28 U.S.C. § 2242 (1982). However, the circumstances in which one may be filed are narrow. Such applications are generally limited to incidents of infancy, incompetency, or lack of time. *See Evans v. Bennett,* 467 F.Supp. 1108, 1110 (S.D.Ala.), *temporary stay issued,* 440 U.S. 1301, 99 S.Ct. 1481, 59 L.Ed.2d 756 (Rehnquist, Circuit Justice), *stay vacated by full Court,* 440 U.S. 987, 99 S.Ct. 1986, 60 L.Ed.2d 370 (1979).[6] The application for the writ must establish some reason satisfactory to the

---

**5.** The record indicates that petitioner had reviewed the box of photos and writings with his appointed public defender prior to the unsolicited delivery of the box to the trial judge's chambers. A.A. VI:93.

**6.** Although there is apparently no published opinion affirming the district court in *Evans,* the chambers opinion of Justice Rehnquist quotes the order by the Court of Appeals for the Fifth Circuit which affirmed the district court's finding that the "next friend" lacked standing in that case.

Court showing why the condemned prisoner did not sign and verify the petition, as well as the relationship and interest of the would-be "next friend." *Weber v. Garza,* 570 F.2d 511, 513–14 (5th Cir.1978).[7] If this explanation is missing from a petition, the Court lacks jurisdiction to consider it. *Id.* at 514.

■ The inquiry has two steps. *See Davis v. Austin,* 492 F.Supp. 273, 275 (N.D.Ga.1980).[8] The would-be "next friend" first must establish standing to assume that role. *Id.* The notion of "next friend" standing exists along a continuum, with immediate relatives of the condemned prisoner having the greatest claim. *Id.* By contrast, the Court should refuse standing to an individual seeking "next friend" status because that individual is morally or philosophically opposed to the death penalty. *Id.; accord Lenhard v. Wolff,* 443 U.S. 1306, 1312, 100 S.Ct. 3, 7, 61 L.Ed.2d 885 (1979) (Rehnquist, Circuit Justice) ("however worthy and high minded the motives of 'next friends' may be, they inevitably run the risk of making the actual defendant a pawn to be manipulated on a chess-board larger than his own case."); *Wilson v. Dixon,* 256 F.2d 536, 538 (9th Cir.1958); *Evans,* 467 F.Supp. at 1111. There has been an implicit endorsement of "next friend" status for the public defender who was appointed by the trial court to represent the condemned prisoner. *See Lenhard v. Wolff,* 603 F.2d 91, 92–93 (9th Cir.), *temporary stay issued,* 443 U.S. 1306, 100 S.Ct. 3, 61 L.Ed.2d 885 (Rehnquist, Circuit Justice), *stay vacated by full Court,* 444 U.S. 807, 100 S.Ct. 28, 62 L.Ed.2d 20 (1979); *but see id.* at 94 (Sneed, J., concurring). For this reason, the Court accepts the standing of CCR to fill the role of "next friend," if one is otherwise appropriate, as the successor under state law [9] to the public defender originally appointed to represent petitioner at trial, then reappointed as standby counsel at sentencing, and subsequently appointed to represent petitioner on his direct appeal.

■ The second step, however, is a showing by the would-be "next friend" that the condemned prisoner is incapable of deciding to prosecute a habeas suit because of incompetence.[10] *Davis,* 492 F.Supp. at

7. Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent upon this Court, *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), absent a clear, contrary holding by the Supreme Court, *United States v. Andrews,* 850 F.2d 1557, 1561 n. 13 (11th Cir.1988) (en banc). In this area, the Supreme Court has not squarely addressed the issues involving "next friend" standing. *See Lenhard v. Wolff,* 443 U.S. 1306, 1312–13, 100 S.Ct. 3, 7, 61 L.Ed.2d 885 (1979) (Rehnquist, Circuit Justice). Perhaps the issue will receive clarification in the next Supreme Court Term. *See Whitmore v. Arkansas,* — U.S. —, 109 S.Ct. 3240, 106 L.Ed.2d 588 (1989), *granting cert. to Simmons v. State,* 298 Ark. 193, 766 S.W.2d 422, 423 (1989). Recent cases continue to cite *Weber* favorably. *See, e.g., Smith By and Through the Mo. Public Defender Comm'n v. Armontrout,* 812 F.2d 1050, 1053 (8th Cir.1986), *cert. denied,* 483 U.S. 1033, 107 S.Ct. 3277, 97 L.Ed.2d 781 (1987); *Wilson v. Lane,* 697 F.Supp. 1489, 1497 (S.D.Ill.1988).

8. Like *Evans,* the Fifth Circuit apparently did not publish its opinion reviewing the district court's determination. According to a footnote in the lower court opinion, however, an emergency panel of the Fifth Circuit denied a stay of execution pending appeal. 492 F.Supp. at 278 n. 2. While the matter was before the Supreme Court the issue of standing was resolved by the condemned's decision to authorize an attorney to act on his behalf.

9. *See* Fla. Stat. § 27.702 (1987). The Court distinguishes this holding from any claim that CCR possesses statutory standing for any indigent condemned prisoner. The state cannot create federal constitutional standing where it does not otherwise exist. Here, CCR is simply a different office that fills the role of counsel already appointed for a condemned prisoner. Consequently, the professional obligations of the appointed trial and appellate counsel devolved upon CCR when it stepped into the chain of representation.

Petitioner's act of firing appointed counsel might alter the analysis of "next friend" status for CCR. However, since stand-by counsel is an accepted procedure for dealing with *pro se* representation and was employed in this case, the public defender *qua* stand-by counsel held certain ethical obligations. To the extent that appointed counsel can gain "next friend" status on the basis of ethical obligations owed to the condemned prisoner, stand-by counsel likely possesses an equal claim to that status.

10. Petitioner obviously is not an infant. Lack of time does not appear to be the reason for his failure to verify this petition.

275. In this regard, a presumption of competence attaches from a determination of competence to stand trial. *See Lenhard,* 603 F.2d at 93; *Evans,* 467 F.Supp. at 1110. The burden rests on the would-be "next friend" to demonstrate intervening events suggesting present incompetence. *See Streetman v. Lynaugh,* 835 F.2d 1521, 1525 (5th Cir.1988); *Lenhard,* 603 F.2d at 93; *Evans,* 467 F.Supp. at 1110. The findings of the psychiatrists in the instant case concede petitioner's competence to stand trial. Consequently, the presumption is invoked and nothing appears of record to contradict its continuing force.[11] When a competent condemned prisoner is unwilling to pursue his collateral review remedies, a "next friend" lacks standing to assert a petition on the prisoner's behalf. *See Gilmore v. Utah,* 429 U.S. 1012, 97 S.Ct. 436, 50 L.Ed.2d 632 (1976) (per curiam); *Rosenberg v. United States,* 346 U.S. 273, 291–92, 73 S.Ct. 1152, 1161–62, 97 L.Ed. 1607 (1953) (opinion of Jackson, J., joined by five Members of the Court), *adopted by the Court, id.* at 288, 73 S.Ct. at 1160; *Lovelace v. Lynaugh,* 809 F.2d 1136, 1137–38 (5th Cir.), *cert. denied,* 479 U.S. 1071, 107 S.Ct. 966, 93 L.Ed.2d 1013 (1987); *Smith,* 812 F.2d at 1059; *Lenhard,* 603 F.2d at 93; *Evans,* 467 F.Supp. at 1111.

Under normal circumstances, the Court would dismiss the petition accordingly. However, the time constraints under which this matter comes to the Court suggest that the issues concerning this aspect of jurisdiction may be underdeveloped to a degree that the Court should exercise caution and treat this petition as one for which jurisdiction is proper.[12]

## IV. CONCLUSION

Based on the Court's review of the petition, response, relevant law and entire record, the Court finds that petitioner has failed to demonstrate ineffective assistance of counsel or any other ground for the granting of a writ of habeas corpus. Accordingly, it is

ORDERED AND ADJUDGED:

1. That the Petition for Writ of Habeas Corpus By a Person in State Custody is hereby denied; and

2. That the Motion for Stay of Execution is hereby denied.

DONE AND ORDERED.

---

11. For this reason, the Court sees no reason for an evidentiary hearing to evaluate petitioner's competence to waive his right to collateral review. *Cf. Lovelace,* 809 F.2d at 1138 (record must cast doubt on mental competence to justify "next friend" petition).

12. Moreover, three justices of the Supreme Court have indicated that "the consent of a convicted defendant in a criminal case does not privilege a State to impose a punishment otherwise forbidden by the Eighth Amendment." *Gilmore v. Utah,* 429 U.S. 1012, 1018, 97 S.Ct. 436, 439–40, 50 L.Ed.2d 632 (1976) (White, J., dissenting, joined by Brennan and Marshall, JJ.). The Court takes note of this position, albeit a minority, in consideration of whether the merits should be reached in this case. It is a factor weighing in favor of a ruling on the merits of the petition even though jurisdiction may be questionable.