**James William HAMBLEN, Petitioner,**

v.

**Richard L. DUGGER, Secretary, Florida Department of Corrections, Respondent.**

**No. 90–616–Civ–J–12.**

United States District Court, M.D. Florida, Jacksonville Division.

July 16, 1990.

See also, 527 So.2d 800.

Larry Helm Spalding, Capital Collateral Representative, Billy H. Nolas, Chief Asst., Julie D. Naylor, Asst., Office of Capital Collateral Representative, Tallahassee, Fla., for petitioner.

Robert Butterworth, Atty. Gen., Carolyn M. Snurkowski, Assistant Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for respondent.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING MOTION FOR STAY OF EXECUTION

MELTON, District Judge.

This cause is before the Court on a Petition for Writ of Habeas Corpus by Person in State Custody and a Motion for Stay of Execution (as supplemented by the Application for Stay of Execution), filed herein by JAMES WILLIAM HAMBLEN ("petitioner"), a death-row inmate at Florida State Prison, together with his Motion for Relief from Judgment/Order Pursuant to Fed.R. Civ.P. 60(b)(5) and/or (6) in Case No. 89–567–Civ–J–12 on the Basis of the Claim Herein Discussed, and Consolidated Notice that the Claim Herein Discussed Should Be Considered as Claim II of the Petition Previously Forwarded for Lodging in the Court, Pending Exhaustion in the State Courts and Should Relief Be Denied by the State Courts, in Case 90–616. Respondent filed an anticipatory response to the original petition and a response to the Rule 60(b) motion. The original petition seeks relief from petitioner's scheduled execution on the sole ground that the Florida Department of Corrections ("DOC"), which respondent heads, allegedly "cannot carry out the execution of a sentence of death under its current procedures without unnecessarily inflicting torture and pain upon the death-sentenced prisoner...." The Rule 60(b) motion, which for reasons stated herein and in Case No. 89–567–Civ–J–12

will be treated as claim two of this petition, seeks relief from petitioner's death sentence on the ground that the Florida Supreme Court reweighed aggravating and mitigating circumstances, following the invalidation of an aggravating circumstance, contrary to the procedures approved in *Clemons v. Mississippi,* ——— U.S. ———, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990). For the reasons set forth herein, the Court will deny the petition, on both claims, and the motion for stay of execution.[1]

## I. BACKGROUND

This case is, in many ways, familiar to the Court. *See Hamblen v. Dugger,* 719 F.Supp. 1051 (M.D.Fla.), *certificate of probable cause denied,* Dkt. No. 89–3554 (11th Cir., July 17, 1989), *stayed pending consideration of cert. petition,* ——— U.S. ———, 110 S.Ct. 7, 106 L.Ed.2d 623 (1989), *cert. denied,* ——— U.S. ———, 110 S.Ct. 3289, 111 L.Ed.2d 797 (1990). Petitioner's claim does not arise from the circumstances of his conviction or the procedure by which he was sentenced to death, except as that procedure involved the reweighing of aggravating and mitigating circumstances by the Florida Supreme Court, so the Court will not repeat here the matters not at contest, which are covered in 719 F.Supp. at 1053–55. Instead, the Court briefly outlines the procedural posture of this case.

Following appellate review of petitioner's conviction and death sentence, the Governor of Florida signed the first death warrant for petitioner on May 1, 1989, to cause petitioner's sentence of death to be executed between July 11 and 18, 1989. After an unsuccessful attempt to seek relief in the state courts, counsel for petitioner, the Office of Capital Collateral Representative ("CCR") filed a petition on his behalf, which he did not join, in this Court. While expressing serious reservations over its

---

1. The Court has rendered its judgment as promptly as circumstances would allow. It should be noted that although the petition was formally filed shortly prior to the release of this opinion, the Court received on Friday, July 13th, copies of the petition, the response, and supporting documents for each. These materials have been studied, together with relevant case law, in the interim. Additional papers were filed earlier today, which also were considered as they were received. The Court is confident adequate time was presented for full and fair consideration of this petition. Counsel are to be commended for facilitating prompt adjudication of the issues.

jurisdiction to hear the petition, *see* 719 F.Supp. at 1059–61, the Court issued a July 10, 1989, order denying the petition on its merits, *see id.* at 1055–59. This Court also refused to stay petitioner's execution and denied the request for a certificate of probable cause. The Eleventh Circuit Court of Appeals temporarily stayed petitioner's execution for consideration of the application for stay and certificate of probable cause, ultimately denying both requests in an order dated July 17, 1989. Petitioner's application for stay of execution of sentence of death addressed to the United States Supreme Court was granted on July 18, 1989, pending the disposition by that Court of the petition for writ of certiorari. *See* — U.S. ——, 110 S.Ct. 7, 106 L.Ed.2d 623 (1989). The Supreme Court denied the petition for writ of certiorari on June 28, 1990, *see* — U.S. ——, 110 S.Ct. 3289, 111 L.Ed.2d 797, thereby automatically terminating the stay of execution.

The Governor of Florida signed a second death warrant for petitioner on July 3, 1990, to cause petitioner's sentence of death to be executed between July 16 and 23, 1990. Petitioner's execution is set for 7:00 a.m. on Tuesday, July 17, 1990. On July 11, 1990, petitioner filed his motion for post-conviction relief in state court, pursuant to Fla.R.Crim.P. 3.850. He asserted the first issue presented here, the alleged prospect of suffering cruel and unusual punishment in Florida's electric chair. The trial court denied the motion on July 12, 1990, relying on the authority of two Florida Supreme Court cases dealing with this issue, *Buenoano v. State*, 565 So.2d 309 (Fla.1990), and *Squires v. State*, 565 So.2d 318 (Fla.1990). Petitioner filed a motion for rehearing which was denied on July 13, 1990. Thereafter, petitioner unsuccessfully sought relief from the Supreme Court of Florida.

On July 16, 1990, the petition was filed in this Court (with petitioner's consent) and respondent filed a response in opposition thereto. Upon review of these papers, which has been ongoing since their advance lodging several days prior to filing, the Court concludes that an evidentiary hearing is unnecessary, a stay of execution is not warranted, and the petition should be denied.

## II. PETITIONER'S CLAIMS

### (A) *Cruel and Unusual Punishment*

Petitioner's first claim arises out of the rather gruesome circumstances attendant to the execution of Jesse Tafero on May 4, 1990. Witnesses to that execution report observing flames, sparks and smoke from Tafero's hooded head, and anatomical reactions that have formed the basis for disagreement between experts on the subject whether Tafero experienced pain and suffering not otherwise part of the process of electrocution. The petition states:

> This claim does not challenge the *proper* carrying out of an execution by electrocution. It is founded on the fact that the [DOC] cannot carry out an execution competently, but refuses to do anything about it. The DOC's equipment does not work properly—it burns, tortures, and unnecessarily inflicts pain and suffering on the executee—but the DOC refuses to fix it. Mr. Hamblen will therefore be subjected to unnecessarily cruel and unusual punishment during his execution.

Petition, at 47–48. Petitioner isolates the problem in the Florida system as an electrode in the skull cap of the electric chair apparatus.

The operation of the electric chair has been the subject of an evidentiary hearing and factual findings by Judge Fawsett of the Orlando Division of this Court in *Buenoano v. Dugger*, Case No. 90–463–Civ–Orl–19, slip op. at 70–82, 1990 WL 119637 (M.D.Fla., June 22, 1990) (hereinafter "Buenoano Order"). Several salient findings made by Judge Fawsett deserve mentioning. First, DOC's theory that a defective sponge created the conductivity problems in the Tafero execution is supported by independent testing by the Florida Department of Agriculture. This testing compared the properties of natural sponges, which DOC previously used, cellulose acetate sponges, which other states using artificial sponges employ, and polyurethane sponges, which was the variety used in the Tafero execution. Buenoano Order, at 78–

79, 81 n. 35. Second, DOC has examined, cleaned and tested all of the equipment involved in the electrocution process, including the skull cap. *Id.* at 79. Third, this testing was subject to inspection by a qualified electrician not in the employ of DOC who performed conductivity tests on the electrodes with an OHM meter.[2] *Id.* at 79–80 & n. 33. Last, Judge Fawsett found a lack of credibility in the opinion testimony that the problems accompanying the Tafero execution have a substantial probability of reoccurring. *Id.* at 80 & n. 34.

■ Petitioner advances several reasons for an evidentiary hearing anew in this Court. On the one hand, he argues that DOC's representations concerning operation of the electric chair are not credible. For instance, he alludes to the infamous "toaster test" of a synthetic sponge and contrasts the experience with synthetic sponges in South Carolina. Both of these matters, however, are disposed of in Judge Fawsett's opinion, wherein the Court refers to the testimony from a Department of Agriculture chemist who performed tests on the sponge used in the Tafero execution, which was chemically different from the type used in South Carolina. Indeed, Fred Leuchter, an expert proffered by petitioner, testified in *Buenoano* that polyurethane sponges inhibit the conduction of electricity and do not absorb water, effectively rebutting petitioner's assertion that the sponge's composition is irrelevant because its conductivity is produced by soaking in a saline solution. (The affidavit of Robert H. Kirschner, M.D., submitted by petitioner, also refers to the increased resistance of the sponge as the cause of reduced charge to Tafero.) These criticisms of DOC, then, do not present issues requiring an evidentiary hearing.

The Court turns to petitioner's other stratagem, the proposal of issues that would be proved if an evidentiary hearing were held. (Petitioner states that Judge Fawsett refused to hear the proposed evidence.[3]) First, petitioner proposes to show that power was lost at Florida State Prison on May 7, 1990, during tests of the electric chair. Because power had not been lost in this fashion previously, petitioner contends that this evidence undermines DOC's subsequent assertion that the equipment now works today as it did prior to Tafero's execution. Second, petitioner would show that agents of DOC sought repair of the head electrode by inmate workers in the maintenance shops of the Florida State Prison prior to Tafero's execution. Petitioner contends that this evidence demonstrates an awareness of the alleged defective condition of the head electrode and DOC's failure to seek proper repair thereof. Third, petitioner would call Fred Leuchter to testify that the only possible explanation for the events surrounding Tafero's execution is a broken or poorly maintained head electrode. Further, Mr. Leuchter would testify to the negotiations between himself and DOC officials in 1986 over proposed repairs and maintenance for the electric chair. Petitioner contends that this latter testimony demonstrates the knowledge of DOC officials of defects in the electric chair. Last, petitioner would present testimony regarding the possibility that Tafero suffered when conductivity problems arose during his execution.

The Court is of the opinion that petitioner has not shown the need for an evidentiary hearing. The proffered evidence, with the exception of Mr. Leuchter's opinion on the cause of the smoke, spark and flame at Tafero's execution, does not call into question the findings made by Judge Fawsett.

**2.** This electrician was employed by a company under contract with the DOC to perform electrical services. Judge Fawsett was informed of the fact of the financial relationship between the company for which the electrician worked and the DOC, although not every detail was laid bare at the *Buenoano* hearing.

**3.** It appears from a review of the exchange between Buenoano's counsel and Judge Fawsett in the transcript of the evidentiary hearing in that case that petitioner's description of the facts is shaded somewhat. Buenoano's counsel protested that he was not prepared to proceed because he lacked many witnesses that he desired to present on the issues also raised in this case. Judge Fawsett refused to postpone consideration because her clerk provided advance notice to counsel of the need to issue subpoenas for testimony and Buenoano's counsel had not adhered to the Judge's instruction.

Moreover, Judge Fawsett considered Mr. Leuchter's explanation and found it wanting. A repetition of the thorough, well-considered work of another member of this Court is not warranted.

The merits of petitioner's claim can be evaluated from two perspectives. One view was followed by Judge Fawsett, who framed the issue as "whether the means selected by the State to carry out the statutory mandate of Florida Statute § 922.10 is malfunctioning so that the execution of Petitioner will be effected with unnecessary pain and suffering in violation of the Eighth Amendment's proscription against cruel and unusual punishment." Buenoano Order, at 77. Following this course entails the assumption that the bizarre circumstances of Tafero's execution involved the infliction of an unconstitutional level of pain and suffering, constituting torture, and the further assumption that absent any change in procedure for the next execution the circumstances will repeat. The Buenoano Order found no prospect of a future constitutional violation because the second assumption was undermined by the investigation and repairs undertaken by DOC. The Court endorses this conclusion; however, a second perspective also deserves airing.

■ Tafero's execution is the sole incident for which it is alleged that the electric chair inflicted cruel and unusual punishment. Whether any suffering took place is a matter of controversy. Petitioner's experts aver that Tafero must have been conscious and felt something; petitioner's counsel have elevated this speculation to the contention that Tafero was tortured or burned alive. Respondent's expert concludes that Tafero experienced no pain because the initial jolt of electricity rendered him devoid of conscious mental awareness and sensate appreciation. Neither speculation is susceptible to proof in a form satisfactory to a court of law.

This speculation is compounded by the profound disagreement among scholars and jurists about the effects of a properly conducted electrocution. See, e.g., Glass v. Louisiana, 471 U.S. 1080, 1086–94, 105 S.Ct. 2159, 2163, 85 L.Ed.2d 514 (1985) (Brennan, J., dissenting from denial of cert.) (discussing literature concerning effects of electrocution and concluding that method violates cruel and unusual punishment clause). This disagreement has its roots in the interpretation of the kind of anatomical responses that form the basis of petitioner's assertion that Tafero suffered during his execution. See id. at 1087–91, 105 S.Ct. at 2164–67. Additionally, the opponents of electrocution count among its infirmities the not infrequent need for more than one application of current to carry out an execution. See id. at 1089–93, 105 S.Ct. at 2165–68.

Petitioner does not contend that electrocution per se is unconstitutional and this argument is foreclosed by precedent. See, e.g., In re Kemmler, 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519 (1890); Porter v. Wainwright, 805 F.2d 930, 943 n. 15 (11th Cir. 1986); Sullivan v. Dugger, 721 F.2d 719, 720 (11th Cir.1983). Moreover, precedent firmly establishes that the need to apply current more than once does not violate constitutional standards. See Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 464, 67 S.Ct. 374, 376, 91 L.Ed. 422 (1947) (plurality opinion of Reed, J.). While the eighth amendment claim professes no disrespect for the process of electrocution, it is difficult to understand how this Court can, other than on the strength of rank speculation, hold true to the precedent endorsing electrocution while concluding that a credible threat of cruel and unusual punishment adheres from the circumstances of the Tafero execution.

"The cruelty against which the Constitution protects a convicted man is cruelty inherent in the method of punishment, not the necessary suffering involved in any method employed to extinguish life humanely." Louisiana ex rel. Francis v. Resweber, 329 U.S. at 464, 67 S.Ct. at 376 (plurality opinion) (emphasis added). Consistent with this principle, "[a]n accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain." Estelle v. Gamble, 429 U.S. 97, 105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); accord Glass, 471 U.S. at 1085, 105 S.Ct. at 2162 (Brennan, J., dissenting from denial of

cert.) ("A single, unforeseeable accident in carrying out an execution does not establish that the method of execution itself is unconstitutional"). The record of executions in Florida places the Tafero execution squarely in the category of a single, unforeseeable accident. The Court has no basis to assume that the circumstances will reoccur, other than the speculation of petitioner's experts concerning the cause of the Tafero mishap and their additional speculation that the DOC's remedial measures will be inadequate to forestall a repetition.

A federal court is particularly ill-suited to fill the role of the office of master electrician for the electrocution chamber at the Florida State Prison. This is, however, the role in which petitioner would cast the Court. A single, freakish episode involving the electric chair is the subject of maintenance, not constitutional adjudication. The Court must rely on the reasonable representations of the DOC that it has taken appropriate steps to remedy any problems in the electric chair.

An occasional malfunction falls within the expectation of a system that relies on mechanical means for the execution of a sentence of death. Alabama has experienced more difficulty over time with its electric chair than has Florida; no constitutional violation has arisen out of those infrequent accidents. *See, e.g., Thomas v. Jones,* 742 F.Supp. 598 (S.D.Ala.1990), *certificate of probable cause denied,* Dkt. No. 90–7471 (11th Cir., July 11, 1990), *stay denied,* —— U.S. ——, 111 S.Ct. 1, 111 L.Ed.2d 817 (U.S.1990); *Ritter v. Smith,* 568 F.Supp. 1499, 1525–26 (S.D.Ala.1983), *aff'd in relevant part,* 726 F.2d 1505, 1519 (11th Cir.), *cert. denied,* 469 U.S. 869, 105 S.Ct. 218, 83 L.Ed.2d 148 (1984). If a pattern of malfunctions develops, perhaps even as few as two consecutive or nearly consecutive executions, then it may become appropriate to consider whether the application of electrocution in Florida is infected with "an element of cruelty." *Louisiana ex rel. Francis v. Resweber,* 329 U.S. at 464, 67 S.Ct. at 376 (plurality opinion). Following a single instance, though, the Court cannot infer that unnecessary pain is being purposefully inflicted in the course of executions, and the measures taken by the DOC act as a prima facie rebuttal to such a notion.

Petitioner's claim encompasses measures which he believes should be taken, but have not been. The eighth amendment, however, does not license the Court to practice the electrician's trade. The evidence heard by Judge Fawsett demonstrates that the DOC has acted reasonably in response to the Tafero execution. If the next execution reveals that the DOC was in error, the result is the unfortunate, unavoidable consequence of the limits of federal court intervention.

(B) *Failure to Remand for Resentencing*

Contemporaneously with this order, the Court is entering in Case No. 89–567–Civ–J–12 an order denying the Fed.R.Civ.P. 60(b) motion on the ground that the Court lacked jurisdiction over that petition. The Court accordingly treats petitioner's claim on this issue as though it is raised for the first time. The Court expresses its concern that petitioner's counsel has not obtained an independent verification from petitioner for the filing of this claim, inasmuch as petitioner did not join the first petition and the Court's understanding of the circumstances of his refusal raises doubt over his likelihood of joining this claim in this petition.

The substance of this claim is simple. The appeal of petitioner's death sentence resulted in the invalidation of one aggravating factor found by the trial court, but the Florida Supreme Court determined that the sentence of death could still be sustained. Petitioner asserts that the procedure by which the state supreme court reweighed aggravating and mitigating circumstances does not fit within any of the procedures approved in *Clemons v. Mississippi,* —— U.S. ——, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), and therefore violates petitioner's eighth amendment right to a reliable sentencing procedure.

The opinion in *Hamblen v. State,* 527 So.2d 800 (Fla.1988) ("*Hamblen I*"), stated, "we are convinced that the elimination of this aggravating circumstance would not have resulted in Hamblen's receiving a life

sentence." *Id.* at 805. Subsequently, in *Hamblen v. Dugger*, 546 So.2d 1039 (Fla. 1989) ("*Hamblen II*"), the state supreme court considered an argument grounded in state law similar to the present one and concluded, "a death sentence may be affirmed when an aggravating circumstance is eliminated if the court is convinced that such elimination would not have resulted in a life sentence." *Id.* at 1041. This latter quote is significant for its citation to *Rogers v. State*, 511 So.2d 526, 535 (Fla.1987), *cert. denied*, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). The *Rogers* case, as this Court previously explained, 719 F.Supp. at 1058, stated a rule that the reweighing of aggravating and mitigating circumstances would not produce the need for remand "only if ... the errors in weighing aggravating and mitigating factors, if corrected, reasonably could have resulted in a lesser sentence. If there is no likelihood of a different sentence, the error must be deemed harmless." *Rogers*, 511 So.2d at 535.

■ Petitioner's claim contains two premises. One premise holds that the Florida law does not permit reweighing of aggravating and mitigating circumstances on direct appeal. This conclusion is reached by relying on an outdated case, *Elledge v. State*, 346 So.2d 998 (Fla.1977), which the Florida Supreme Court expressly distinguished in *Hamblen II*, and by exacting quotations from cases in which no invalid aggravating circumstances were found. Obviously, *Rogers* and *Hamblen I* stand for the proposition that the Florida Supreme Court undertakes a different role when the mix of aggravating and mitigating circumstances are altered on appeal.

■ The second premise in petitioner's claim holds that Florida's procedure does not fall within a method for reweighing endorsed in *Clemons*. It is plain from *Rogers*, however, that the Florida Supreme Court uses a harmless error standard in the reweighing process. The citation of *Rogers* in *Hamblen II* provides adequate assurance that the reweighing in petitioner's case received proper review. The use of harmless error analysis is firmly endorsed in *Clemons*, 110 S.Ct. at 1450.

Interestingly, a case relied upon in *Clemons* to establish the principle of appellate reweighing is *Wainwright v. Goode*, 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983), a Florida case. *See Clemons*, 110 S.Ct. at 1449. The prominence of *Goode* undermines petitioner's argument in all respects.

## IV. MOTION FOR STAY OF EXECUTION

■ Petitioner's Motion for Stay of Execution merits brief, separate discussion because cases in which the cruel and unusual punishment argument has been raised have been stayed. Specifically, the Eleventh Circuit Court of Appeals issued a stay in *Buenoano v. Dugger*, Dkt. No. 90–3525 (11th Cir., June 23, 1990), and a member of the Tampa Division of this Court issued a stay in *Squires v. Dugger*, Case No. 90–848–Civ–J–12 (M.D.Fla., July 9, 1990) (Kovachevich, J.). The Court has reviewed these cases and determined that the considerations expressed therein do not warrant a stay in this case.

The stay issued in *Buenoano* is terse. It states:

> The district court certified that there exists probable cause for an appeal. This court is unable to resolve the merits of petitioner's appeal before the expiration of the warrant period. Accordingly, the execution of petitioner is STAYED pending further order of this court.

This statement should be read contextually. The certificate of probable cause placed before the appellate court encompassed many claims in addition to the cruel and usual punishment claim, and that appeal is her first federal habeas petition. By contrast, in a case arising out of Alabama involving a successive petition that raised a cruel and unusual punishment claim concerning operation of Alabama's electric chair, the Eleventh Circuit denied the application for a certificate of probable cause and the motion for a stay of execution. *Thomas v. Jones*, Dkt No. 90–7471 (11th Cir., July 11, 1990).

Petitioner's view of the stay in *Buenoano* would impose a restraining order on all

executions in Florida pending resolution of that appeal. The Eleventh Circuit, however, intimated no such intent. While it is possible to read Judge Kovachevich's stay in *Squires* as adhering to petitioner's view, her order also mentions the Court's frustration at the inability of Squires' counsel to prepare to conduct an evidentiary hearing so that a stay might be avoided. Moreover, Judge Kovachevich did not have the benefit of the subsequent denial of stay in *Thomas*, so this Court may respectfully decline to follow her lead on the basis of intervening authority.

It is the opinion of the Court that, in consideration of the standard for a stay of execution as set forth in *Bundy v. Wainwright*, 808 F.2d 1410, 1421 (11th Cir.1987), petitioner has established the irreparable nature of harm he faces if a stay is not granted, but he has failed to demonstrate a sufficient likelihood of success on the merits that would justify a stay and the harm to other parties and the public interest weigh against granting a stay.

## V. CONCLUSION

Based on the Court's review of the petition, response, relevant law and entire record, the Court finds that petitioner has failed to demonstrate any ground for granting of a writ of habeas corpus. Accordingly, it is

ORDERED AND ADJUDGED:

1. That the Petition for Writ of Habeas Corpus By a Person in State Custody is hereby denied;

2. That the Motion for Stay of Execution (as supplemented by the Application for Stay of Execution) is hereby denied; and

3. That the Clerk of the Court is hereby directed to give immediate telephonic notice of the entry of this order, and its contents, to the attorneys of record, the Governor of the State of Florida and to the respondent, individually.

DONE AND ORDERED.