LENHARD ET AL., CLARK COUNTY DEPUTY PUBLIC
DEFENDERS, INDIVIDUALLY AND AS NEXT FRIENDS
OF BISHOP *v.* WOLFF, WARDEN, NEVADA
STATE PRISON SYSTEM, ET AL.

No. A–172.   Decided September 7, 1979

MR. JUSTICE REHNQUIST, Circuit Justice.

On August 25, 1979, I temporarily enjoined respondents
from executing Jesse Bishop, upon whom a death sentence
was imposed by the State District Court for Clark County,
Nev., and affirmed by the Supreme Court of Nevada in July
1979.   I issued the injunction so that I would be able to con-
sider the response of Nevada officials and additional informa-
tion of record which I requested from each of the parties.
In the exercise of what I find to be as difficult a task as must
be performed by any Member of this Court—the obligation
to act as surrogate for the entire Court in deciding whether
to grant or deny extraordinary relief pursuant to 28 U. S. C.
§ 1651 pending disposition of a petition for certiorari by the

full Court—I have determined that it is appropriate to continue the stay of execution pending consideration by the full Court. Since the State of Nevada is entitled to have the mandates of its courts enforced unless they offend the laws or Constitution of the United States, and since Jesse Bishop has concededly disclaimed any effort either by himself or by others on his behalf to prevent his execution, I feel obliged to summarize briefly the reasons which lead me to refer the application to the full Court.

The defendant under sentence of death has wholly disclaimed any effort to seek a stay from this Court or to seek review of the decision of the Supreme Court of Nevada by means of certiorari in this Court. The only two comparable cases which have come before this Court are *Gilmore* v. *Utah,* 429 U. S. 1012 (1976), and *Evans* v. *Bennett,* 440 U. S. 1301, in which I granted a stay of execution on April 5, 1979, in order that the case might be considered by the full Court. The full Court thereafter vacated the stay. *Evans* v. *Bennett,* 440 U. S. 987 (1979). In each of these cases, the defendant under sentence of death had disassociated himself from efforts to secure review of that sentence.* In *Evans,* I entered the stay of execution in recognition of the fact that four Members of the Court had dissented from the ultimate denial of the stay in *Gilmore, supra.* While my Brothers BRENNAN and MARSHALL's view of the death sentence as "cruel and unusual punishment" within the prohibition of the Eighth Amendment under all circumstances might permit review of any capital case by this Court, the dissenting opinions of my Brothers WHITE and BLACKMUN seem more limited in scope. Those opinions urged plenary consideration of the application to resolve doubts about the standing of Gilmore's

---

*In *Evans,* the Court was informally advised after the date upon which I granted the stay that Evans had authorized the prosecution of the federal habeas corpus action in the United States District Court for the Southern District of Alabama.

mother to prosecute the action without her son's consent when substantial questions regarding the constitutionality of the state statute remained unresolved. I therefore concluded in *Evans* that a stay until the regularly scheduled Conference of the Court the following week would be most consonant with my obligations as Circuit Justice.

In my view, the initial barrier to be overcome in the present case by applicants Lenhard and Franzen, who with commendable fidelity to their assignment by the trial court have sought this stay and petitioned for habeas relief in the federal courts, is the finding of the courts which have passed on the question that defendant Jesse Bishop is competent to waive the assertion of any constitutional infirmities in the sentence imposed upon him by the Nevada courts. A successful attack on Bishop's competency is the requisite threshold for applicants' standing. Even if standing were not a barrier, a view some Members of the Court may well subscribe to, applicants still would have the burden of demonstrating some constitutional deficiency in the proceedings, as I read the views of my Brother WHITE. For this reason, I have considered the nature of the judicial review afforded on the merits thus far, as well as the review afforded the determination of Bishop's competency.

At the trial court level, both Evans and Bishop pleaded guilty, whereas Gilmore was tried and sentenced by a jury. Gilmore declined to seek any appellate review in the Supreme Court of Utah, and was granted none. Evans' conviction and sentence were reviewed pursuant to a requirement for mandatory appeal in both the Alabama Court of Appeals and in the Supreme Court of Alabama. Bishop's case was comprehensively reviewed by the Supreme Court of Nevada. Evans additionally unsuccessfully sought a writ of certiorari from this Court to review the judgment of the Supreme Court of Alabama, which writ was denied on February 20, 1979. 440 U. S. 930. Thus, each of the three cases had progressed to

different levels of review within the judicial system: Gilmore had neither sought nor obtained any appellate review of the death sentence imposed upon him by the trial court; Bishop has obtained full review by the Supreme Court of Nevada of the death sentence and proceedings which led up to it in the trial court; Evans not only obtained state appellate review, but also petitioned this Court unsuccessfully for a writ of certiorari challenging the affirmance of his death sentence by the Alabama courts.

In *Gilmore,* no state or federal court had reviewed the constitutionality of the Utah statute. The Supreme Court of Nevada in reviewing Bishop's case, however, expressly upheld the constitutionality of the Nevada capital punishment statute. The court reasoned:

"The Nevada statutes authorizing the imposition of the death penalty are similar to the Florida statutes which were found to be constitutional in *Proffitt* v. *Florida,* 428 U. S. 242 (1976). The Nevada statutes provide for a consideration of any mitigating factor the defendant may want to present. NRS 200.035 (7). Cf. *Lockett* v. *Ohio,* [438 U. S. 586 (1978)]. The imposition of the death penalty in this case offends neither the United States Constitution nor the Nevada Constitution." *Bishop* v. *Nevada,* 95 Nev. 511, 517–518, 597 P. 2d 273, 276–277 (1979).

Again, in my view, the substantive constitutional arguments which might be made by defendant Bishop in this Court in support of review of the judgment of the Supreme Court of Nevada bear only tangentially on the merits of the application for stay, since the contentions are not being made by Bishop, but rather by the public defenders asserting that they act as "next friends." But since MR. JUSTICE WHITE, joined by MR. JUSTICE BRENNAN and MR. JUSTICE MARSHALL in *Gilmore,* stated that "[u]ntil the state courts have resolved the obvious, serious doubts about the validity of the state statute, the

imposition of the death penalty in this case should be stayed," 429 U. S., at 1018, and MR. JUSTICE BLACKMUN stated that "the question of Bessie Gilmore's standing and the constitutional issue are not insubstantial," *id.*, at 1020, it is apparent that four Members of this Court do not consider the issue of the "standing" of a relative to assert claims which the convicted defendant refuses to assert and the merits of those claims to be wholly disassociated from one another. The constitutionality of Bishop's sentence has, in any event, been subjected to substantially greater scrutiny than the sentence imposed in *Gilmore*.

From my view of the controlling legal precepts, the record evidence of competency is more important to the determination of whether a stay is appropriate than is the merit of the underlying application. While I do not purport to have extensive knowledge of the concept of "next friend" in a legal proceeding such as this, it strikes me that from a purely technical standpoint a public defender may appear as "next friend" with as much justification as the mother of John L. Evans or of Gary Gilmore. But I do think the contrast between the position of Bishop's family in this case and that of Gilmore's mother and Evans' mother in those cases is worth noting. Here Bishop's family has by no means repudiated him, but they have at the same time declined to pursue or join in the pursuit of any further judicial review of the death sentence. While the familial relationship of the "next friend" to the defendant may not be relevant to the technical question of standing, it may provide some inferences as to the issue of competence. The refusal of the family to seek relief may well support the finding of the courts which have considered the question that the defendant is competent to waive additional proceedings.

Gilmore underwent competency proceedings both prior to trial and after he announced his intention to waive appellate review. With respect to the waiver of the latter right, the

trial judge appointed a prison psychiatrist to examine Gilmore. On the basis of a 1-hour interview the psychiatrist submitted a report to the court finding Gilmore competent to waive appeals. Reports of two prison psychologists were submitted as corroboration, and the trial judge entered a finding of competency.

Bishop was found competent to plead guilty and represent himself after an evidentiary hearing at which three examining psychiatrists reported that Bishop was competent. There has been no subsequent *judicial* determination of his competency to waive further litigation. A state-appointed psychiatrist, however—the only psychiatrist that Bishop would consent to see—submitted a report based on a 4-hour interview, concluding that Bishop is competent to waive further review. The United States District Court for the District of Nevada, in its opinion in the habeas proceeding dated August 23, 1979, stated:

> "The Court has reviewed the record of the proceedings before the Nevada Supreme Court and the Eighth Judicial District of the State of Nevada and, based thereon, finds that Jesse Walter Bishop made a knowing and intelligent waiver of any and all federal rights he might have asserted both before and after the Eighth Judicial District imposed sentence, and, specifically, that the State of Nevada's determinations of his competence knowingly and intelligently to waive any and all such rights were firmly grounded." Application, App. B, p. 5.

On appeal to the Court of Appeals for the Ninth Circuit, a panel of that court stated in its opinion:

> "Bishop himself has steadfastly maintained that he does not wish to seek relief in the federal courts and refuses to authorize any petition for habeas corpus or stay of execution to be filed on his behalf. Most recently he appeared in open court at the hearing before the district court on August 23, 1979 and declared that he believes

he has a constitutional right to waive any rights to a federal appeal and desires to do so. He maintained he was intelligently and competently exercising his right to refrain from seeking relief from the federal courts." 603 F. 2d 91, 93 (1979).

The Court of Appeals went on to observe that following the initial determination of competence to stand trial and plead guilty:

"[T]here has been no showing of Bishop's incompetence. . . .

"Bishop was found to be competent at the time of trial by three psychiatrists; he was observed by the panel of three judges during the penalty hearing; he was observed in a subsequent proceeding before the trial court on July 25, 1979; he appeared personally before the United States District Court on August 23, 1979; and he was examined by a licensed psychiatrist on August 21, 1979. On none of these occasions was there an indication to those responsible persons that he was incompetent. We find that there has been no evidence of incompetence sufficient to warrant a hearing on the issue." *Ibid.*

I thus find myself in much the same position in which I found myself in *Evans* v. *Bennett.* If I were casting my vote on the application for a stay as a Member of the full Court, I would vote to deny the stay. I am in full agreement with the *per curiam* opinion of Judges Wright, Sneed, and Hug of the United States Court of Appeals for the Ninth Circuit. I am likewise in full agreement with the observations of Judge Sneed in his concurring opinion suggesting that however worthy and high minded the motives of "next friends" may be, they inevitably run the risk of making the actual defendant a pawn to be manipulated on a chessboard larger than his own case. The idea that the deliberate decision of one under sentence of death to abandon possible additional legal avenues of attack on that sentence cannot be a rational decision, re-

gardless of its motive, suggests that the preservation of one's own life at whatever cost is the *summum bonum,* a proposition with respect to which the greatest philosophers and theologians have not agreed and with respect to which the United States Constitution by its terms does not speak.

But because I am acting as surrogate for the full Court, and because the Court will have an opportunity to consider this application at its regularly scheduled Conference the last week of this month, I have resolved doubts which greatly trouble me as to my proper course of action in favor of continuing the injunction which I previously issued to and including Monday, October 1, 1979, unless previously modified or vacated by the Court.

STATEMENT SHOWING THE NUMBER OF CASES FILED, DISPOSED OF, AND REMAINING ON DOCKETS AT CONCLUSION OF OCTOBER TERMS 1976, 1977, AND 1978 (AS OF JULY 2, 1979)

| Terms | ORIGINAL | | | PAID | | | IN FORMA PAUPERIS | | | TOTALS | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1976 | 1977 | 1978 | 1976 | 1977 | 1978 | 1976 | 1977 | 1978 | 1976 | 1977 | 1978 |
| Number of cases on dockets | 8 | 14 | 17 | 2,324 | 2,341 | 2,379 | 2,398 | 2,349 | 2,335 | 4,730 | 4,704 | 4,731 |
| Number disposed of during terms | 2 | 3 | 0 | 1,852 | 1,911 | 1,954 | 2,064 | 1,953 | 1,985 | 3,918 | 3,867 | 3,939 |
| Number remaining on dockets | 6 | 11 | 17 | 472 | 430 | 425 | 334 | 396 | 350 | 812 | 837 | 792 |

| TERMS | 1976 | 1977 | 1978 |
|---|---|---|---|
| Cases argued during term | 176 | 172 | 168 |
| Number disposed of by full opinions | 154 | 153 | [1] 153 |
| Number disposed of by per curiam opinions | 22 | 8 | [2] 8 |
| Number set for reargument | 0 | 9 | 8 |
| Cases granted review this term | 169 | 162 | 163 |
| Cases reviewed and decided without oral argument | 207 | 129 | 110 |
| Total cases to be available for argument at outset of following term | 88 | 75 | 79 |

[1] Includes No. 78 Orig.
[2] Includes No. 8 Orig. and No. 77-154

AUGUST 10, 1979