Rev. Murphy DAVIS and Leonard Potts, Individually and as next friends acting on behalf of Jack Howard Potts

v.

Sam AUSTIN, Warden, Georgia State Prison, (2 Cases)

Civ. Nos. C80–954A, C80–45G.

United States District Court, N. D. Georgia, Atlanta and Gainesville Divisions.

June 9, 1980.

Laughlin McDonald, Neil Bradley, H. Christopher Coates, Atlanta, Ga., for plaintiff.

Arthur K. Bolton, Atty. Gen., Don A. Langham, First Asst. Atty. Gen., Susan V. Boleyn, Daryl A. Robinson, Asst. Attys. Gen., Mary Beth Westmoreland, Staff Asst. Atty. Gen., Atlanta, Ga., for defendants.

## ORDER

O'KELLEY, District Judge.

As the caption indicates, these are actions brought by the Reverend Murphy Davis on behalf of Jack Howard Potts. The pleadings and evidence indicate that Mr. Potts is currently under sentences of death from the Superior Courts of Cobb and Forsyth Counties, Georgia. Those sentences are currently scheduled to be carried out on Thursday, June 5, 1980. Presently before the court are the petitioner's motion for a hearing, motion for leave to proceed as next friend, motion for stay of execution, and petition for a writ of habeas corpus. These matters were presented to the court on the evening of June 3, 1980. Due to the extremely serious nature of the proceedings, the court set a hearing at 7:30 a. m. on June 4, 1980, for the purpose of determining (1) whether the Reverend Murphy Davis would be allowed to proceed as next friend of Jack Potts, and (2) if she was allowed to so proceed, whether Jack Howard Potts was competent to make a knowing and intelligent waiver of his right to continued appellate review or collateral attack upon the sentences of death imposed on him by the courts of Georgia.

The hearing commenced as directed. The petitioner called as her first witness Mr. Leonard Potts, the first cousin of Jack Howard Potts. Mr. Potts testified that he was reared with his first cousin and had known him throughout his life. Leonard Potts testified that at approximately 7:40 p. m. on Tuesday night June 3, 1980, he had talked to Jack Howard Potts on the telephone from the Georgia State Prison at Reidsville, Georgia. During that conversation Leonard Potts asked Jack Howard Potts if he wished to appeal his conviction. Leonard Potts testified that Jack Howard Potts responded that the Lord would guide him, that he did not want to die and had never said he wanted to die. He stated to Leonard Potts that he wished the Lord's will to be done. Leonard Potts testified that he felt, from the statements made to him concerning the Lord's wishes, that Jack Howard Potts was confused and for that reason he contacted counsel for the petitioner in this matter and asked counsel to represent him as "next friend" of Jack Howard Potts. Counsel for petitioner made an oral motion to add Leonard Potts as an additional "next friend" of petitioner in these actions. The court granted the motion to add Leonard Potts as a party, expressly reserving the question of whether or not Leonard Potts or Reverend Davis are persons who have standing to bring these actions as "next friend" of Jack Howard Potts.

After hearing the testimony presented, the court concludes that neither

Reverend Davis nor Leonard Potts is an appropriate person to bring a "next friend" action on behalf of Jack Howard Potts. The court views its inquiry as twofold. The petitioners must first meet the threshold requirement of showing that they are "next friends." If that showing is made, petitioners must also demonstrate that a "next friend" suit is maintainable because the person on whose behalf they act is incompetent. *See Lenhard v. Wolff*, 443 U.S. 1306, 100 S.Ct. 3, 61 L.Ed.2d 885 (1979); *Evans v. Bennett*, 440 U.S. 1301, 99 S.Ct. 1481, 59 L.Ed.2d 756 (1979); *Gilmore v. Utah*, 429 U.S. 1012, 97 S.Ct. 436, 50 L.Ed.2d 632 (1976). The case law does not establish an easily applied test as concerning the requirements for standing as "next friend." The cases establish that such actions may be appropriate in cases of infancy, lack of time, and incompetency. *United States v. Preiser*, 506 F.2d 1115, 1126 n.8 (2d Cir. 1974). Although the relationship and interest of the proposed "next friend" is to be considered by the court before it entertains such an action, the cases do not adequately define who might act as next friend. *See Weber v. Garza*, 570 F.2d 511 (5th Cir. 1978). The court must start with the proposition that members of the public in general do not have a right to intercede as "next friend" in an action such as this because they are morally or philosophically opposed to the death penalty. On the other end of the scale, close relatives, such as a parent, spouse, or sibling, who maintain a close personal relationship with the aggrieved, would be appropriate persons to maintain a "next friend" action. The persons seeking to bring this action are not properly catalogued on either end of the spectrum. In seeking to determine whether such persons may institute a "next friend" action, the court should endeavor to keep in mind that

> [i]t was not intended that the writ of habeas corpus should be availed of, as a matter of course, by intruders or uninvited meddlers, styling themselves next friends.

*Wilson v. Dixon*, 256 F.2d 536, 538 (9th Cir. 1958).

The Supreme Court has not spoken on the interest or connection required of a next friend. At most it has implicitly recognized that in appropriate situations the mother of a condemned prisoner or the public defenders appointed by the trial court to represent a prisoner might be appropriate "next friend" litigants. The court is, therefore, left with little upon which to rely. After consideration of the particular circumstances surrounding this action as well as the relationship and interest of Reverend Davis and Leonard Potts, the court finds that they have had little connection with Jack Howard Potts during his adult life, that they have not been significantly involved with the criminal process concerning him, that they have had little recent contact with him and have had no ongoing personal relationship of any significance during the period in question. The testimony shows that Reverend Davis is an ordained Presbyterian minister and Director of the Southern Prison Ministry of Georgia. She is philosophically opposed to capital punishment. Reverend Davis has had some personal contact with Jack Howard Potts over approximately one and half years and has counseled with him on occasion. The evidence does not demonstrate that she is in any way his personal minister or religious adviser. The evidence showed that Mr. Potts, while incarcerated, has been a member of a Seventh Day Adventist church and was subsequently converted to Catholicism. The testimony was that Reverend Davis had seen Jack Howard Potts some four to six times over the past year. The last two occasions when Reverend Davis talked to Jack Howard Potts were December of 1979 and February of 1980. She has had no contact with him since that time. The court finds that Reverend Davis developed a relationship with Jack Howard Potts that a number of persons philosophically opposed to capital punishment and wishing to become personally involved might place themselves in. Although the court has no doubt as to the deep sincerity of Reverend Davis' convictions, her connection with Jack Howard Potts is that of a concerned minister who has made herself available to assist him.

Such a relationship is insufficient to confer upon her status as "next friend." The court is in agreement with Justice Rehnquist's statement in *Lenhard v. Wolff, supra*, "that however worthy and highminded the motives of 'next friends' may be, they inevitably run the risk of making the actual defendant a pawn to be manipulated on a chess board larger than his own case." *Id.* at 1312, 100 S.Ct. at 7.

Leonard Potts testified that he is the first cousin of Jack Howard Potts and has known him throughout his life. He further testified that he and Jack Potts attended church together as they were growing up. The testimony further showed, however, that Leonard Potts has not visited Jack Howard Potts in over a year and has had only two contacts with him during that period. One contact was the telephone call of Tuesday night, June 3, 1980, referred to above; the other was a letter addressed to Leonard Potts and his wife from Jack Howard Potts, which was received on April 20, 1980. The evidence showed that Jack Howard Potts has been in prison most of his adult life and that Leonard Potts has not had a great deal of contact with him during that period. Although Leonard Potts has a somewhat closer relationship to Jack Howard Potts because of his blood relation, he has demonstrated little in the way of interest as next friend, other than being philosophically and religiously opposed to the death penalty. The court finds, therefore, that Leonard Potts does not have standing to bring an action as "next friend" of Jack Howard Potts.

 Near the close of the hearing of June 4, 1980, co-counsel for petitioners indicated to the court that he had been contacted by telephone by Jack Howard Potts' brother, John W. Potts, who had requested that he be added as an additional petitioner in these actions. Co-counsel represented to the court that John W. Potts was at the Georgia State Prison in Reidsville, Georgia, and had spent a period of time with Jack Howard Potts during that day. From the representations of counsel, the court is not prepared to allow an additional party; however, the court recognizes that due to the exigencies of the situation and the extremely serious nature of these proceedings, the realities of the situation must be faced. Jack Howard Potts' brother has been in intimate contact with Jack Howard Potts as recently as the afternoon of June 4, 1980, and apparently on numerous other recent occasions. Certainly he would appear to have a significantly greater connection with Jack Howard Potts than either Reverend Davis or Leonard Potts has for the purpose of bringing a "next friend" petition. Because it is not unlikely that John W. Potts would be an appropriate "next friend," the court feels compelled to address the further issue of Jack Howard Potts' competence to waive his right to further appellate review of and/or collateral attack upon his state convictions. Even if there is an appropriate "next friend" before the court, a "next friend" action is inappropriate absent a showing that Jack Howard Potts is incompetent. *See Lenhard v. Wolff, supra; Evans v. Bennett, supra; Gilmore v. Utah, supra.*[1]

It is not contended that Jack Howard Potts has not had the opportunity to exercise any legal rights which he might wish to pursue. The evidence is clear that he dismissed his attorney, requested that the Supreme Court of Georgia dismiss his appeal before it, and has thereafter consistently expressed his desire that no legal action be taken on his behalf. The question before the court is whether Jack Howard Potts is competent to waive any and all rights for additional review of his convictions. *Gilmore v. Utah, id.* at 1013, 97 S.Ct. at 437. After hearing the evidence presented, the court finds that Jack Howard Potts has made a decision that was made knowingly, intelligently, deliberately, rationally, coherently, and with full understanding of the consequences of foregoing further court appeals or collateral attacks of his two convictions and sentences of death.

1. Jack Howard Potts' mother has at all times refused to intercede on her son's behalf.

The evidence presented by petitioners was insufficient to even raise the issue of Jack Howard Potts' competence. None of the three witnesses called by petitioners presented testimony that would raise the specter of incompetence. Leonard Potts testified only that Jack Potts stated that he did not know what the Lord wanted him to do and that a letter received by Leonard Potts indicated that Jack Howard Potts was in some pain. Reverend Davis indicated that in the past Jack Howard Potts had been the victim of poor medical care and was in constant pain resulting from the complications of a bullet wound in the area of his mouth, fragments of a bullet lodged in his neck, some numbness in his right side, and some dizziness. Reverend Davis has spoken with Mr. Potts only twice since he initially decided to abandon further legal action. The only other witness called by petitioners was an attorney involved in a lawsuit in the Southern District of Georgia concerning the conditions of confinement at Georgia State Prison, where Jack Howard Potts has been housed for most of the period in question. That witness indicated that he had filed a motion on December 5, 1979, for extraordinary medical relief on behalf of Jack Howard Potts. In that motion a number of physical problems which Jack Howard Potts indicated needed medical attention were cited. The testimony indicated that the motion was dismissed without prejudice at the request of Jack Howard Potts. Evidence authenticated by the witness indicated that during the period that Jack Howard Potts has been incarcerated at Georgia State Prison there have been and continue to be a number of inadequate conditions in the prison. The documentary evidence presented by petitioners would, at most, tend to show that Jack Howard Potts has some medical problems and experiences some pain. There was no significant evidence presented concerning Jack Howard Potts' competency or lack thereof since December of 1979.

In contrast to the dearth of evidence produced by petitioners on the competence of Jack Howard Potts to knowingly and intelligently waive his right to pursue legal avenues of relief, the state provided evidence to the court which the court finds proves beyond any reasonable or rational doubt that Jack Howard Potts made a knowing, intelligent, uncoerced, and understanding waiver. For the month of May of this year Jack Howard Potts was transferred to the Georgia Diagnostic and Classification Center at Jackson, Georgia. The warden of that institution testified that he had personal contact with Jack Howard Potts daily during that time. The warden's testimony is totally consistent with a finding that Jack Howard Potts was fully coherent and was in no way mentally impaired by pain from his prior maladies or from any other source. Testimony indicated that Jack Howard Potts was calm, rational, and well organized. The warden had no difficulty communicating with Jack Howard Potts at any time.

Also testifying for respondent was the executive officer for the State Board of Pardons and Paroles. He testified that he talked to Jack Howard Potts on February 29, 1980. That conversation lasted for some four hours. The statements which the witness attributed to Jack Howard Potts were rational and did not in any way indicate incompetence. The witness testified further that Mr. Potts complained of no pain or discomfort and made no request for medical assistance. In his opinion Jack Howard Potts appeared in full control of his faculties and was rational.

At the request of the Board of Pardons and Paroles, Jack Howard Potts was evaluated by two psychologists. Dr. Alfred Heilbrun, who, from the testimony, appears to be a fully qualified and experienced clinical psychologist, met with Jack Howard Potts at the Georgia State Prison on March 19, 1980, administered a psychological test to him, and conversed with him for a period of approximately one hour. Dr. Heilbrun testified that Jack Howard Potts never complained to him of any physical ailment. It was Dr. Heilbrun's professional opinion that Jack Howard Potts' thinking was intact, coherent, and relevant, and that there was no indication of thought disorder. It was

further Dr. Heilbrun's professional opinion that there was no evidence of any delusional disorder. The state also produced a videotape of a press conference held by Jack Howard Potts at the Georgia State Prison on June 2, 1980. The videotape produced was approximately thirty minutes in length and constituted all of the press conference except for some two or three minutes. The court viewed the videotape in full. At that press conference, held only two days prior to the hearing, Jack Howard Potts appeared to the court to be in full possession of his faculties, rational in every regard, calm, and showing no signs of physical pain or impairment. Jack Howard Potts responded to a number of difficult and probing questions at that time in a rational and consistent manner. Dr. Heilburn, after viewing the videotape of the press conference, stated that he was able to perform an adequate comparison with his findings of March 19, 1980. He stated that his impressions of Jack Howard Potts' thinking as being coherent, relevant, and rational and that Jack Howard Potts is in no way delusional were unchanged.

In summary, petitioners failed to present evidence which even raises the specter that pain, either singularly or in conjunction with prison inadequacies, has rendered Jack Howard Potts not competent to make a knowing and intelligent waiver of his right to further legal action. For that reason the court finds that petitioners are not entitled to a stay and that the applications for a writ of habeas corpus should be denied as there is no basis for a "next friend" petition. Accordingly, the clerk is directed to enter judgment for respondent.[2]

IT IS SO ORDERED this 6th day of June, 1980.

2. As this court made an immediate oral ruling refusing to stay the execution and because less than a day remained before imposition of sentence, the court and counsel endeavored to immediately bring the matter before an emergency panel of the Fifth Circuit Court of Appeals for an application to stay execution pending appeal. There were communications between the court and the presiding judge of the emergency panel in the presence and with the participation of counsel concerning the nature of the action and the evidence presented. Shortly after these communications were concluded, the court was notified orally by the clerk of the Fifth Circuit Court of Appeals that the emergency panel had denied petitioners' application for a stay of execution pending appeal and petitioners' application for a stay of execution pending application to the Supreme Court of the United States for a writ of certiorari or for alternative relief.

Moments before the court received that notice, the court received a telephone call from a representative of an attorney who had been seeking permission to represent Jack Howard Potts in a federal habeas corpus proceeding. She represented to the court that Jack Howard Potts had signed an authorization for attorneys Millard Farmer, Andrea Young, and Joe Nursey to represent him in such proceedings. Within an hour the attorney general's office verified that the authorization had been given. Mr. Nursey, who was standing by in chambers, filed with the clerk applications to stay execution and petitions for writs of habeas corpus attacking the two convictions and death sentences. As these actions were filed by Jack Howard Potts' legal representatives, and because Mr. Potts' convictions have not received federal review, the court granted a stay of execution in those cases so that a full consideration might be given to the merits of petitioner Potts' claim.