**Michael J. MINERVA, Capital Collateral Representative, and Judith J. Dougherty, Assistant Capital Collateral Representative, as Next Friends to Michael Alan Durocher**

v.

**Harry K. SINGLETARY, Jr., Secretary, Florida Department of Corrections.**

No. 93–1221–Civ–J–20.

United States District Court,
M.D. Florida,
Jacksonville Division.

Aug. 23, 1993.

Martin J. McClain, Office of Capital Collateral Representative, Tallahassee, FL, for petitioners.

Richard Martell, Office of Atty. Gen., Tallahassee, FL, for respondent.

## OPINION AND ORDER

SCHLESINGER, District Judge.

This action is brought in this Court by the Capital Collateral Representative ("CCR"), which purports to act on behalf or as "next friend" of putative Petitioner Michael Durocher. Durocher is presently scheduled to be executed by the State of Florida on August 25, 1993, pursuant to a warrant signed by the Governor on May 26, 1993. It appears beyond doubt to this Court that Durocher neither has solicited nor authorized any representation by CCR in this matter, and that he does not wish to pursue any further challenge to his sentence.

CCR initially filed a Petition for Extraordinary Relief and for a Writ of Habeas Corpus, Motion for Stay of Execution, Petition for a Writ of Mandamus, and Request for Extension of Rule 3.851 Time Limit in the Florida Supreme Court on June 25, 1993. On August 12, 1993, the Florida Supreme Court held that "CCR has no duty or right to represent a death row inmate without that inmate's permission." *Durocher v. Singletary,* 623 So.2d 482 at 485 (Fla.1993). However, the Supreme Court, mindful of the state's obligation to ensure that the waiver of collateral counsel is knowing, intelligent and voluntary, directed the trial judge to conduct an inquiry pursuant to *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562

(1975), and to determine whether Durocher "understands the consequences of waiving collateral counsel and proceedings." *Id.* On August 16, 1993, the Honorable William A. Wilkes, Circuit Judge of the Fourth Judicial Circuit, in and for Clay County, Florida, conducted a hearing at which he addressed Durocher personally and in open court. Upon concluding his colloquy with Durocher, Judge Wilkes found that Durocher "knowingly, intelligently and voluntarily waived the right to be represented by the Capital Collateral Representative, as well as he's waived the right to any further proceedings in this case." Transcript of August 16, 1993 Hearing at 11. Subsequently, Judge Wilkes certified this finding to the Supreme Court, which subsequently dismissed the Petition for Writ of Habeas Corpus. *Durocher v. Singletary,* No. 81,986 (Aug. 17, 1993) (dismissal Order).

CCR now seeks similar extraordinary relief in this Court in the form of a Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Doc. No. 1, filed August 23, 1993). The state of Florida filed a Response in opposition (Doc. No. 7, filed August 23, 1993). CCR filed a Reply to the Response at 7:01 P.M. (Doc. No. 8, filed August 23, 1993).

### (1) *The right to collateral counsel*

Essentially, and despite Durocher's protestations to the contrary, CCR asserts that it is authorized to represent Durocher and to file the instant Petition. CCR's position is premised on an argument, previously rejected by the Florida Supreme Court, *supra,* at 484–85, that the Florida statute creating CCR not only provides for the representation of death row state defendants, but imposes mandatory representation upon such individuals, presumably irrespective of the prisoner's own wishes. In relevant part, the enabling statute of CCR provides:

> The capital collateral representative shall represent, without additional compensation, any person convicted and sentenced to death in this state who is without counsel *and who is unable to secure counsel due to his indigency* or determined by a state court of competent jurisdiction to be indigent for the purpose of instituting and prosecuting collateral actions challenging

the legality of the judgment and sentence imposed against such person in the state courts, federal courts in this state, the United States Court of Appeals for the Eleventh Circuit, and the United States Supreme Court.... Representation by the capital collateral representative shall commence upon termination of direct appellate proceedings in state or federal courts, ...

Fla Stat. ch. 27.702(1) (1992 Supp.) (emphasis supplied). Thus, under this section, "each defendant under sentence of death is *entitled*, as a statutory right, to effective legal representation by the capital collateral representative in all capital relief proceedings." *Spalding v. Dugger*, 526 So.2d 71, 72 (Fla. 1988) (emphasis supplied).

The subsection of the enabling statute entitled "Legislative intent" states, in relevant part:

It is the intent of the Legislature to create [CCR] to provide for the representation of any person convicted and sentenced to death in this state *who is unable to secure counsel due to indigency*, so that collateral proceedings to challenge such conviction may be commenced in a timely manner and so as to assure the people of this state that the judgments of its courts may be regarded with the finality to which they are entitled in the interests of justice.

*Id.* ch. 27.7001 (1991). By providing this statutory right, the legislature also intended to "avoid the attendant problems of determining the need to appoint counsel and the utilization of volunteer counsel, including the resulting delays in that process." *Spalding*, 526 So.2d at 72.

Thus, the Florida legislature, mindful of the risks and complexities inherent in obtaining post-conviction relief for death row inmates, decided to provide for this one class of Florida prisoners a right not otherwise available under either the Florida or United States Constitutions, namely, the right to counsel for collateral proceedings. That which must be stated, however, is the plain fact that this "right" to counsel is possessed by the Florida death row prisoner, not by

CCR. Thus, it is the prisoner's right to be represented by CCR, not CCR's right to represent the prisoner.

■ Therefore, to possess the right to be represented by CCR in collateral proceedings, a Florida inmate must demonstrate the following: (1) that he has been convicted and sentenced to death; (2) that he is without counsel; (3) that he is unable to secure counsel; (4) that he is indigent, as demonstrated by himself or as determined by a state court; and (5) that the inability to secure counsel is due to this indigency. *See id.*

The third factor is particularly determinative, for it implies that the prisoner has made some attempt to be represented for collateral proceedings, and thus wants to be represented, yet is "unable" to secure counsel. That the inability to secure counsel must be due to indigency is but one *further* criterion which must be established. The central point, however, is that the prisoner first must desire to pursue a collateral attack, which desire may also manifest an "inability" to secure counsel.

Thus, the Court rejects CCR's argument that, as a matter of Florida statutory law, it must represent all indigent death row inmates upon termination of their direct proceedings. Instead, the Court finds that CCR exists merely to represent those inmates who desire to pursue a collateral attack on their conviction and who have been unable to secure counsel for this purpose due to their indigency. What the statute did, quite clearly, was to make collateral representation mandatorily *available if wanted*, not compulsory and involuntarily imposed without regard for the desires and intentions of the convicted.

Additionally, merely from a practical standpoint, it is at least slightly absurd to suggest that the Florida legislature would have established CCR if that agency's goal was to represent *every* inmate and challenge *every* death sentence. This would run contrary to the legislature's clearly stated intent of "assur[ing] the people of this state that the judgments of its courts may be regarded with the finality to which they are entitled in the interests of justice." *Id.* ch. 27.7001.[1]

---

**1.** Of course, CCR's representing *all* death row inmates is one possible outcome, but one reliant

■ Nevertheless, even if the Court were to accept CCR's theory of mandatory representation which would commence at the moment the direct appeals end, irrespective of an inmate's desire vel non to seek post-conviction remedy, no "mandatory representation" can *continue* against the desires of the alleged represented. In fact, *no* representation should properly continue—in *any* legal context—where the alleged represented expressly renounces the representation. Of course, jurisprudential safeguards exist to insure that rights such as these are not unwittingly waived. Thus, assuming that the right to collateral representation by CCR is subject to the same waiver standard as that imposed under the Sixth Amendment for the right to trial counsel, then an inmate such as Durocher cannot waive the right to be represented by CCR unless he does so "competently and intelligently." *Godinez v. Moran,* —— U.S. ——, ——, 113 S.Ct. 2680, 2685, 125 L.Ed.2d 321 (1993) (citing *Johnson v. Zerbst,* 304 U.S. 458, 468, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461 (1938)). But where an individual *can* make such a competent, voluntary and intelligent waiver, this Court neither will "imprison a man in his own privileges," *Adams v. United States ex rel. McCann,* 317 U.S. 269, 280, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942), by forcing an unwanted lawyer upon him, nor countenance any efforts to undermine that individual's choice.[2]

The United States Supreme Court addressed an analogous situation in *Faretta, supra.* The Court there held that where a defendant voluntarily and freely elects to defend himself without counsel, a state may not force him to accept a court-appointed

attorney against his will. *Id.* 422 U.S. at 817, 95 S.Ct. at 2532. In so holding, the Court stated:

> The language and the spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a *willing* defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a case, counsel is not an assistant, but a master.... An unwanted counsel "represents" the defendant only a tenuous and unacceptable legal fiction. *Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed by the Constitution, for, in a very real sense it is not his defense.*

422 U.S. at 820, 821, 95 S.Ct. at 2533, 2534 (footnote omitted) (emphasis supplied). As stated most eloquently by the Supreme Court in *Adams:*

> The right to the assistance of counsel and the *correlative right to dispense with a lawyer's help* are not legal formalisms. They rest on considerations that go to the substance of an accused's position before the law.... What were contrived as protections for the accused should not be turned into fetters.... To deny an accused a choice of procedure in circumstances in which he, though a layman, is as capable as any lawyer of making an intelligent choice, is to impair the worth of great

on the chance that *every* such inmate desire to pursue collateral action and be unable to secure collateral counsel due to indigency.

**2.** CCR argued before the Florida Supreme Court that the CCR statute "does not demonstrate in any way that a waiver is permissible." Reply to Response to Petition (in Florida Supreme Court) at 4. Of course, the text of the Sixth Amendment does not demonstrate that waiver of counsel (or of the other rights expressed therein) is permissible either, but it is now beyond doubt, by virtue of binding judicial decisions, that waivers are feasible and to be given effect.

The case upon which CCR so strongly relied in the Florida Supreme Court for the proposition

that waiver of CCR cannot occur, *Klokoc v. State,* 589 So.2d 219 (Fla.1991), is inapposite. There the public defender, at the defendant's insistence, moved to dismiss an *appeal* of conviction because the defendant wanted to dismiss the *appeal* and be executed. The court denied the motion, stating that "in order for *appellant* to have a meaningful *appeal,* the Court must have the benefit of an adversary proceeding with diligent *appellate* advocacy addressed to both the judgment and the sentence." *Id.* at 222 (emphasis supplied). The concerns therein expressed by the Florida Supreme Court, however, deal only with the need for a meaningful and adversarial *direct appeal,* and do not address the question of waiver of counsel on collateral review.

Constitutional safeguards by treating them as empty verbalisms.

317 U.S. at 279, 280, 63 S.Ct. at 241, 242.

In the end, and as it must always be, it is the *accused*—in this instance the *convicted*—who possesses the right to counsel. Thus, assuming, however dubious the proposition may be, that the statutorily-created right to be represented by capital collateral counsel in Florida approaches the magnitude of the Sixth Amendment's right to trial counsel, the right to counsel simply remains that what it purports to confer upon a *defendant* (not a lawyer), namely, a right to "*assistance* at what, after all, is *his*, not counsel's" proceeding. *McKaskle v. Wiggins*, 465 U.S. 168, 174, 104 S.Ct. 944, 948, 79 L.Ed.2d 122 (1984) (latter emphasis supplied).

*(2) "Next Friend" Standing*

■ The Court holds, as did the Florida Supreme Court with respect to the Motion under Rule 3.850, that CCR (in this case, by and through Michael Minerva and Judith J. Dougherty) has no standing to pursue a Petition for Writ of Habeas Corpus as a "next friend" of Durocher. While habeas corpus courts have permitted "next friends" to proceed on behalf of a prisoner who is unable to seek relief himself, "next friend standing is not without limit." *Lonchar v. Zant*, 978 F.2d 637, 641 (11th Cir.1992), *stay denied*, *cert. denied*, —— U.S. ——, 113 S.Ct. 1378, 122 L.Ed.2d 754 (1993). The burden of establishing "next friend" standing is on the purported "next friend" to establish clearly the propriety of his status, and thereby justify the jurisdiction of the Court. *Whitmore v. Arkansas*, 495 U.S. 149, 164, 110 S.Ct. 1717, 1728, 109 L.Ed.2d 135 (1990). In that case the Supreme Court addressed the requirements and limitations of this doctrine:

> Decisions applying the habeas corpus statute have adhered to at least two firmly rooted prerequisites for "next friend" standing. First, a "next friend" must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the action.... Second, *the "next friend" must be truly dedicated to*

> *the best interests of the person on whose behalf he seeks to litigate, ....*

> Theses limitations on the "next friend" doctrine are driven by the recognition that "it was not intended that the writ of habeas corpus should be availed of, as matter of course, by intruders or uninvited meddlers, styling themselves next friends."

495 U.S. at 163–64, 110 S.Ct. at 1727–28 (citations omitted) (emphasis supplied). It is beyond doubt that the second requirement is not met in the instant case. Clearly, CCR is not "truly dedicated to the best interests" of Durocher, who has repeatedly stated, emphatically, that he wishes no further review of his case, and specifically no assistance from CCR. Where a prisoner is unwilling to pursue collateral review, a "next friend" lacks standing to assert a petition on that prisoner's behalf. *Gilmore v. Utah*, 429 U.S. 1012, 1014–16, 97 S.Ct. 436, 437–39, 50 L.Ed.2d 632 (1976); *Hamblen v. Dugger*, 719 F.Supp. 1051, 1061 (M.D.Fla.), *stay granted*, 492 U.S. 929, 110 S.Ct. 7, 106 L.Ed.2d 623 (1989), *cert. denied*, 497 U.S. 1031, 110 S.Ct. 3289, 111 L.Ed.2d 797 (1990).

As to the first requirement, CCR must show that Durocher is unable to litigate his own cause (assuming he wants to litigate any cause, and he does not) due to "mental incapacity, lack of access to court, or other similar disability." *Id.* 495 U.S. at 165, 110 S.Ct. at 1728. CCR plainly cannot make this showing, either, particularly in light of the Supreme Court's further restriction that this first requisite "is not satisfied where an evidentiary hearing shows that the defendant has given a knowing, intelligent, and voluntary waiver of his right to proceed, and his access to court is otherwise unimpeded." *Id.* No showing has been made that Durocher's access to this Court is impeded; furthermore, such a waiver hearing did occur, as directed by the Florida Supreme Court, and Judge Wilkes made this very finding to which *Whitmore* refers. As expressed below, this Court will give effect to that finding, and will not conduct any hearings of its own.

*(3) Waiver of the right to collateral counsel and waiver of the right to a collateral proceeding*

■ The Court must state that merely because Durocher is on death row does not

render him incapable of making rational decisions. *See Lenhard v. Wolff,* 443 U.S. 1306, 1312–13, 100 S.Ct. 3, 6–7, 61 L.Ed.2d 885 ("The idea that the deliberate decision of one under sentence of death to abandon possible additional legal avenues of attack on that sentence cannot be a rational decision, regardless of its motive, suggests that the preservation of one's own life at whatever cost is the *summum bonum,* a proposition ... with respect to which the United States Constitution by its terms does not speak.").

Specifically, assuming again that the waiver standard for Durocher's statutory right to be represented by CCR is the same as that for the constitutional right to trial counsel, then Durocher would have to manifest a voluntary, intelligent and freely made waiver of this right. Quite clearly, he has done so here. This Court finds that his written statement submitted to the Florida Supreme Court that he wishes no further appeals of his case, and that he specifically does not want *anyone* from CCR to pursue potential collateral relief, demonstrates not only a total disinclination to proceed with any collateral attack, but equally a waiver of his specific statutory right to be represented by CCR. This is Durocher's right, not CCR's. Moreover, as will be discussed below, this Court finds that the colloquy held in the state trial court pursuant to the Florida Supreme Court's directive lucidly demonstrates that Durocher's waiver was rendered freely, knowingly and voluntarily, and with an awareness of the resulting consequences.

■ In its most pertinent part, the instant Petition attempts to challenge the sufficiency of the hearing held before Judge Wilkes on August 16, 1993.[3] However, as discussed below, CCR's argument in this regard is rife with inaccuracy, and is without merit.

In relevant part, the federal habeas corpus statute states:

> In any proceeding instituted in a Federal court [pursuant to section 2254], a determi-

nation after a *hearing* on the merits of a factual issue, made by a State court of competent jurisdiction ....., evidenced by a written finding, written opinion, or other reliable and adequate written indicia, *shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear,* or the respondent shall admit—
(1) that the merits of the factual dispute were not resolved in the State court hearing;
(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;
(3) that the material facts were not adequately developed at the State court hearing;
(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;
(5) that the applicant was indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;
(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or
(7) that the applicant was otherwise denied due process of law in the State court proceeding;
(8) or unless ... the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record: ...

28 U.S.C. § 2254(d) (emphasis supplied). It is CCR's contention that exceptions (1), (2), (3), (6) and (8) apply, and thus should act to bar this Court from giving any deference to Judge Wilkes' finding.

The Court emphatically disagrees. First, nowhere did the Florida Supreme Court, in its remand Order, state that an "adversarial" or "evidentiary" hearing needed to occur.

---

**3.** The Court will consider CCR's challenge to the waiver hearing only to the extent that it appears to be CCR's way of establishing the first requirement for "next friend" standing (that the real party interest—Durocher—has some disability, e.g., mental incapacity, preventing him from litigating his own cause). However, the Court's assessment is for jurisdictional purposes only, and not for the purpose of resolving any substantive claims of lack of competence, which will be left unaddressed.

Rather, and as cited by CCR, the court stated that the Circuit Court should conduct a *"Faretta*-type evaluation of Durocher to determine if he understands the consequences of waiving collateral counsel and proceedings." *Durocher v. Singletary*, 623 So.2d 482, 485 (1993). The court added that CCR and the Attorney General could be present, but "may not participate unless permitted to do so by the judge." *Id.* Thus, that which the Florida Supreme Court directed was a hearing to mirror that which occurred in *Faretta*. Significantly, in *Faretta* the hearing was neither "adversarial" nor "evidentiary," but rather a colloquy between the trial judge and the defendant, in that case to determine whether to accede to the defendant's wish to conduct his own trial defense. "After consideration of Faretta's answers, and observation of his demeanor, the judge ruled that Faretta had not made an intelligent and knowing waiver of his right to the assistance of counsel, ..." *Faretta*, 422 U.S. at 810, 95 S.Ct. at 2529. Additionally, as characterized by the Supreme Court:

> Here, weeks before trial, Faretta clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel. The record affirmatively shows that Faretta was literate, competent and understanding, and that he was voluntarily exercising his informed free will.

*Id.* at 836, 95 S.Ct. at 2541. Thus, "under these circumstances," by forcing Faretta to accept a court-appointed public defender against his will, the California courts deprived Faretta of his constitutional right to conduct his own defense. *Id.* Noticeably, nowhere in that lengthy opinion did the Supreme Court state that this type of evaluation, conducted by a judge who inquires personally of the defendant, must be "adversarial" or "evidentiary" in nature. Thus, CCR's protestations that the hearing before Judge Wilkes "was not an adversarial proceeding" and that "[n]o evidence was received," Pet. at 26, are ill-founded.

Turning to the hearing itself, the Court finds that CCR, with regard to its attack on the factual finding made by Judge Wilkes, has failed to establish either (1) that the merits were not resolved; (2) that the finding was based on an inadequate procedure; (3) that the material facts were not adequately developed; (4) that the hearing was not "full, fair, and adequate"; or (5) that the finding was "not fairly supported by the record." 28 U.S.C. § 2254(d)(1), (2), (3), (6), (8). At the outset, Judge Wilkes stated the reason for the hearing, reminded Durocher of his conviction and sentence, and reminded Durocher of CCR's efforts to bring a petition on his behalf in the state court. Transcript of Proceedings before the Honorable William A. Wilkes, August 16, 1993, Appendix 8 to Pet., at 3, 4 [hereinafter "Tr."]. Durocher responded that he was aware of CCR's efforts, reiterated that he previously had stated to the Florida Supreme Court and the Governor that he did not want CCR's assistance, and stated, in response to Judge Wilkes' direct inquiry, that this was still his desire (to not be represented by CCR). Thereafter, the following colloquy ensued:

> THE COURT: All right, Now, the decision that I have to make today or at least inquire about is whether or not you can intelligently and knowingly waive that right to have counsel to represent you; that is, this Capital Collateral Representative, and also whether you're going to waive all those proceedings that might be left in the future; is that correct?
>
> THE DEFENDANT: Right.
>
> THE COURT: Now, you do understand, do you not, that a death warrant has been signed by the governor? Is that yes?
>
> THE DEFENDANT: Yes, I do, yes.
>
> THE COURT: And you do understand that a date of execution has been set for August the 25th which is—
>
> THE DEFENDANT: That's right.
>
> THE COURT: —some nine days from today; is that correct?
>
> THE DEFENDANT: Eight days.
>
> THE COURT: Eight days. All right. And you understand that should you waive these proceedings and nothing further is done—
>
> THE DEFENDANT: I will be put to death on the 25th.
>
> THE COURT: All right.

THE DEFENDANT: Yes, sir.

THE COURT: Now, Mr. Durocher, have you had any conversations with the Capital Collateral Represèntative?

THE DEFENDANT: I have.

THE COURT: Okay. And has that been more than one time?

THE DEFENDANT: Yes.

THE COURT: Did they contact you rather than you contact them?

THE DEFENDANT: They would always contact me.

THE COURT: Okay. Did you ever request that they represent you?

THE DEFENDANT: No, I have not.

THE COURT: Do you still want to proceed without their representation?

THE DEFENDANT: Yes, I do.

THE COURT: Do you desire any representation from the Public Defender's Office or any legal counsel?

THE DEFENDANT: No, I don't.

THE COURT: And we have talked about this in prior proceedings but I'd like to briefly go over it with you again. Do you understand that during the trial part of this case, which was back in '91, that when Mr. Chipperfield represented you up to a point in the trial that he obviously was your lawyer and—

THE DEFENDANT: Yes, sir, he was.

THE COURT: —Obviously he was a very capable lawyer?

THE DEFENDANT: Yes, sir, he was.

THE COURT: And then subsequent to that you—once the death penalty was imposed you have continued to indicate to all that would listen that you wanted to get on with this death sentence and that you did not want to have any further proceedings filed on your behalf or that you were to be presented by any other attorneys or representatives on your behalf; is that correct?

THE DEFENDANT: Yes, it is.

THE COURT: And is that still your feeling today?

THE DEFENDANT: Yes, it is.

THE COURT: And as you stated to me earlier, you recognize that come August the 25th it's awful final, nothing can be undone after that date if that is the final day?

THE DEFENDANT: That's right, yes, it is.

THE COURT: Is that correct?

THE DEFENDANT: Yes, it is.

THE COURT: Mr. Durocher, how old are you?

THE DEFENDANT: I'm 33.

THE COURT: Thirty-three. And in addition to these cases, there's also two other cases that you've been found guilty of first-degree murder; is there not?

THE DEFENDANT: Right.

THE COURT: And one of those cases the death penalty was imposed and one life sentence was imposed?

THE DEFENDANT: That's right.

THE COURT: And you do understand as we've talked about in the past about the function of a lawyer, how they would advise you and give you advice? You're not trained in any law, are you?

THE DEFENDANT: No, I'm not.

THE COURT: And you recognize that that's the purpose of a lawyer, they're trained to defend and present whatever issues that are available on your behalf?

THE DEFENDANT: Yes, I do.

THE COURT: And you understand between now and August the 25th that if you allow this Capital Collateral Representative to continue to represent you that they can file other petitions on your behalf, not just limited to the State Supreme Court but over in Federal Court—

THE DEFENDANT: Right.

THE COURT: —to attack any aspect of the case, such as incompetent counsel or—

THE DEFENDANT: Right.

THE COURT: —any constitutional issue that you like all other defendants in this country are entitled to?

THE DEFENDANT: Right.

THE COURT: Anything else you want to tell me?

THE DEFENDANT: Well, like I would just like to add that I have been found competent in the past five years. Okay.

Like I was found competent to stand trial, but like everybody's got this big question now that like I might not be competent to be put to death and like I would just like to add that I just think that this is all just a bunch of bullshit.

THE COURT: And you're convinced that you are competent?

THE DEFENDANT: Oh, yes, I am.

THE COURT: And as you recall—

THE DEFENDANT: I have thought about all the possibilities, Judge. I have thought about this for about five years now and this is the route that I, that I would like to take.

Tr. at 4–9. Judge Wilkes then acceded to a request made by one of CCR's representatives to allow Durocher to meet with an English "pen pal of his." Tr. at 10, 11. At the conclusion of the hearing, Judge Wilkes stated that he found that Durocher "knowingly, intelligently and voluntarily waived the right to be represented by the Capital Collateral Representative, as well as he's waived the right to any further proceedings in this case." Tr. at 11. Judge Wilkes subsequently certified this finding, per written Order, to the Florida Supreme Court, which dismissed CCR's petition.

The record of the hearing, and in particular the excerpt quoted above, fails to establish that Durocher was not aware of the necessary results of his decision to abandon legal representation and further appeal. Judge Wilkes specifically inquired as to whether Durocher knew the necessary consequences of his waiver, and reiterated to Durocher that if his waiver were accepted and no further appeals initiated, the sentence of death would be carried out. Durocher manifested an awareness of this consequence, and a particular unwillingness to avail himself of representation by CCR or anyone, and an unwillingness to avail himself of any collateral proceedings.

■ A state court's determinations on the merits of a factual issue are entitled to a presumption of correctness by the federal habeas court, which "may not overturn such determinations unless it concludes that they are not 'fairly supported by the record.'"

*Demosthenes v. Baal,* 495 U.S. 731, 735, 110 S.Ct. 2223, 2225, 109 L.Ed.2d 762 (1990) (citing section 2254(d)(8)). The Court finds that CCR, as the purported applicant in this Petition, has failed to establish—and it does not otherwise appear to the Court—that any of the enumerated factors within section 2254(d) are present in this case.

Ordinarily, a state court's findings are accorded a presumption of correctness to which this court is bound unless one of the conditions mandated in section 2254(d)(1)–(8) are shown to exist. Unlike pure factual issues, which involve " 'what are termed basic primary, or historical facts: facts "in the sense of a recital of external events and the credibility of their narrators ...," ' " *Stokes v. Singletary,* 952 F.2d 1567, 1573 (11th Cir. 1992) (citation omitted), waiver of counsel is a mixed question of fact and law, *Fitzpatrick v. Wainwright,* 800 F.2d 1057, 1063 (11th Cir. 1986). Thus, the Court adopts the state trial court's factual findings which are stated in the Order entered by Judge Wilkes on August 16, 1993, and this Court makes the following specific factual findings itself concerning Durocher's waiver of his right to assistance by CCR and his right to collateral proceedings: (1) that Durocher's waiver of these rights was made knowingly, intelligently and voluntarily; (2) that Durocher understood that this waiver was not limited to the Florida Supreme Court, but included federal court collateral proceedings as well; and (3) that this waiver included any constitutional claims that he might desire to raise.

**(4)** *Exhaustion of remedies and this Court's discretion*

■ In addition, the requirements of the federal habeas corpus statute and the principles of comity lead this Court to abstain from reaching the merits of any of the substantive claims raised within the instant Petition. An application for a writ of habeas corpus shall not be granted "unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C.

§ 2254(b). Furthermore, an applicant shall not be deemed to have exhausted state remedies if he has "the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). As the Eleventh Circuit has stated, the doctrine of exhaustion of state remedies "is not a concept of subject matter jurisdiction but rather of federalism and comity, intended to give the state the initial opportunity to decide alleged violations of federal constitutional rights." *Thompson v. Wainright*, 714 F.2d 1495, 1504 (11th Cir.1983), *cert. denied*, 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 562 (1984). "The question is not of federal power but equitable discretion." *Id.* As stated in *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), "*discretion* was the flexible concept employed by the federal courts in developing the exhaustion rule." *Id.* at 438 (emphasis supplied), *overruled on other grounds in Stone v. Powell*, 428 U.S. 465, 478 n. 11, 96 S.Ct. 3037, 3044 n. 11, 49 L.Ed.2d 1067 (1976).

■ Durocher specifically has chosen to not avail himself of the collateral procedures and remedies available to him in the courts of the state of Florida. Because he has elected to "bypass" those fora, which remained open to him under Florida law, this Court, "out of deference to state interests," *Thompson*, 714 F.2d at 1504, will decline to pass on the merits of the instant Petition. Where an applicant "has deliberately by-passed the orderly procedure of the state courts," and, thus, forfeited his state court remedies, a federal habeas judge may in his discretion deny relief. *Fay*, 372 U.S. at 438, 83 S.Ct. at 849. If a habeas applicant knowingly and understandingly forgoes the privilege of seeking to vindicate his federal claims in state court, "then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his legal claim on the merits." *Id.* at 439, 83 S.Ct. at 849.

If a state "withhold[s] effective remedy, the federal courts have the power and duty to provide it." *Id.* at 441, 83 S.Ct. at 849. In the case at bar, and as stated above, there are effective remedies *available* to Durocher in the Florida courts. That he has chosen to not *pursue* such relief does not mean that the federalism and comity concerns are no longer implicated. On the contrary, where a prisoner such as Durocher does not wish even to seek federal relief, those concerns for deference are even greater, and this Court must be ever mindful of entertaining a dispute for which another, more appropriate forum of first resort exists.

Accordingly, as an additional reason for denying this Petition, the Court in the exercise of its discretion will not entertain any claim for relief in this case because it finds that the putative Petitioner has deliberately bypassed his available state remedies.

### (5) *Case or controversy*

The Court is well cognizant of the role of CCR in the representation of Florida defendants sentenced to death. Florida's efforts in establishing and funding a state agency for this purpose was indeed a positive step towards the distribution of effective legal representation for all defendants. Indeed, this Court has witnessed highly effective advocacy displayed by CCR on behalf of its (actual) clients in other cases.

In the instant case, the Court appreciates CCR's efforts on behalf of Durocher, yet finds, for the reasons stated above, that Durocher is not CCR's client, Durocher having specifically manifested his desire to not be represented by *anyone*, and particularly not by CCR. That Durocher's wishes are contrary to those of CCR does not render them products of incompetence or insane delusion, nor unsusceptible to this Court's ratification.

■ Federal judicial power under Article III "exists only to redress or otherwise protect against injury *to the complaining party*." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (emphasis supplied). A federal court's jurisdiction, therefore, can be invoked "only when the plaintiff himself has suffered some threatened or actual injury." *Id.* (quotation omitted). Implicit in this doctrine, however, is the notion that the party who is aggrieved *actually desires* to pursue a claim.

In the instant case, there simply is no proper party before this Court, because the

putative injured party does not wish to pursue any claim. For the reasons expressed above, the Court finds that CCR has no standing to pursue this action on behalf of Michael Durocher, because of the lack of this "central component of Article III's 'case or controversy' requirement." *Region 8 Forest Serv. Timber Purchasers v. Alcock,* 993 F.2d 800, 805 (11th Cir.1993) (citing *Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)).

 Accordingly, the Petition (Doc. No. 1) is **DISMISSED.**[4]

Additionally, and for the reasons expressed above, alleged Petitioner Durocher's Motion for Leave to Proceed In Forma Pauperis (Doc. No. 3, filed August 23, 1993) is not well taken, and is **DENIED.** Similarly, because there is no Petition before this Court, Petitioner's Motion for Nunc Pro Tunc Appointment of Counsel Pursuant to the Criminal Justice Act (Doc. No. 6, filed August 23, 1993) is **DENIED.**

Alleged Petitioner Durocher's Motion for A Stay (Doc. No. 4, filed August 23, 1993) is not well taken, and is **DENIED.** Also before the Court is an Application for a Stay of Execution and Request for an Evidentiary Hearing by Michael J. Minerva, et al. (Doc. No. 5, filed August 23, 1993). There has been no showing of likelihood of success on the merits or even a cogent argument that Durocher has ever been denied a federal constitutional right. *See Bundy v. Wainwright,* 808 F.2d 1410, 1421 (11th Cir.1987). Furthermore, there is no need for evidentiary hearing, because the record in this case shows that Durocher was given a "full, fair and adequate hearing" in state court. *See* 28 U.S.C. § 2254(d)(6); Rule 8, Rules Governing Section 2254 Cases in the United States District Courts. This Court has judiciously considered and resolved all the federal constitutional claims which this Court properly may consider at this time. There is no need to grant a stay where the putative Petitioner

does not wish to seek relief in this Court, or any other court, and does not wish any attorney to do so on his behalf.

 Also before the Court is Petitioner's Application for Certificate of Probable Cause and Certificate to Appeal In Forma Pauperis (filed August 23, 1993). A certificate of probable cause "should issue only when a habeas petitioner has made a 'substantial showing of the denial of a federal right.'" *Lindsey v. Thigpen,* 875 F.2d 1509, 1512 (11th Cir.1989) (quoting *Barefoot v. Estelle,* 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1963)). The Court finds that there has been no substantial showing of a denial of any federal constitutional rights. An applicant must demonstrate that the issues are "debatable among jurists of reason" and "adequate to deserve encouragement to proceed further." *Barefoot,* 463 U.S. at 893 n. 4, 103 S.Ct. at 3395 n. 4 (citations omitted). Furthermore, the Court finds that jurists of reason will not differ with the decision made by this Court. Accordingly, the Application for Certificate of Probable Cause and Certificate to Appeal In Forma Pauperis is **DENIED.**

The Court realizes that last minute petitions from "next friends" of death row inmates are often viewed sympathetically. *See Baal,* 495 U.S. at 737, 110 S.Ct. at 2226. But, as the Supreme Court there added, "federal courts are authorized by the federal habeas statutes to interfere with the course of state proceedings only in special circumstances. Before granting a stay, therefore, federal courts must make certain than an adequate basis exists for the exercise of federal power. In this case, that basis was plainly lacking." *Id.*

DONE AND ORDERED.

---

4. The Court is mindful of the directive of the court of appeals in *Clisby v. Jones,* 960 F.2d 925, 936 (11th Cir.1992), which instructed the district courts in this circuit to resolve all claims raised in a § 2254 petition, regardless of whether relief is granted or denied. However, the Court construes that directive—and the policies it properly serves to advance—to apply only to *actual* petitions. Because the Court has concluded that there simply is no petition before this Court, *Clisby* is not applicable to the instant case.